ANTOINI GUYKOWSKI, plaintiff in error *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Clinton.*

In a criminal cause the accused stands on all his rights, and waives nothing which is irregular, and more especially so when life is in question.

An alien is not qualified to serve as a juror in any case.

The declaration that certain qualifications are necessary to be possessed by the individual, to constitute him a juror, necessarily disqualify the person who does not possess such qualifications.

The affidavit of a prisoner, upon a motion for a new trial, is *prima facie* evidence of the truth of the statements it contains.

*Semble,* That the affidavit of a juror in support of the verdict, on a point entirely disconnected with his acts or the motives for his conduct, may be admitted on a motion for a new trial.

Where the precept for summoning the jury at a special term of a Circuit Court called for the trial of a prisoner charged with a capital crime, had been lost by the sheriff, and the Court directed a new one to be filed *nunc pro tunc*; *Held* that there was no error.

All mere formal objections to an indictment, should be made before pleading.

IN June, 1838, a special term of the Circuit Court was held in Fayette county, for the trial of Guykowski, the plaintiff in error, then imprisoned in the jail of said county, on the charge of having murdered Nelson Ryall.

The judge produced in Court the written notification of the sheriff of said county, requesting that a special term of said Court be held for the purpose of the said trial.

The judge certified that he had issued his precept to the said sheriff, authorizing him to summon jurors, and the sheriff made affidavit that the said precept had been lost, or mislaid, after the jurors had been summoned.

The Court thereupon ordered a precept to be filed *nunc pro tunc.*

The defendant, by his counsel, moved to quash the array, which motion was afterwards withdrawn.

The counsel on behalf of the People, then moved to quash the array, on the ground that the precept had not been returned by the sheriff. The motion was overruled.

On the seond day of the term, Josiah Fisk was appointed by the Court, to prosecute in the absence of the Attorney General.

On the third day of the term, the grand jury found an indictment for murder against Guykowski. He pleaded not guilty.

The venue was changed upon the application of the prisoner, to Clinton county, where the cause was tried at the September term, 1838, before the Hon. Sidney Breese, and a verdict of guilty found by the jury.

The defendant moved the Court for a new trial, on the following grounds:

1. That the verdict was contrary to law and evidence.

2. That John Burnside, one of the jurors in the cause, was an alien and an unnaturalized citizen, which fact was unknown to the defendant and his counsel, until after the rendering of said verdict. The last ground was supported by the affidavit of the defendant.

This motion the Court overruled, to which opinion of the Court, the defendant, by his counsel, excepted.

The defendant filed his affidavit, stating that the Attorney General had resigned previous to the trial of said cause, and that no appointment had been made by the Governor until after the same; and that one Josiah Fisk, without authority, advised the finding of said indictment; and then moved in arrest of judgment, on the following grounds:

1st. That no person was authorized by law to sign said indictment.

2d. That the Attorney General, at the time of finding said indictment, had resigned his office.

3d. That Josiah Fisk, who signed the same, had no legal authority to do so.

4th. The authority of the grand jury to find the indictment, is not set forth in the indictment.

5th. It is no where shown in said indictment, that the Court was called for the trial of the defendant.

6th. ,The sheriff did not return the order of the judge, and the process by which the Court was called, and grand and petit jurors summoned.

This motion the Court overruled.

Sentence of death was then pronounced on the defendant.

A. P. FIELD and JAMES SHIELDS, for the plaintiff in error, relied upon the following points and authorities :

Aliens disqualified from being jurors, R. L. 378 ;(1) 3 Coke on Littleton 516, Aliens to be challenged ; 1 Chit. Crim. Law 251, No alien can serve on grand jury ; do. 408, Whenever a grand juror may be challenged, so may a petit juror ; 3 Harr & Mc Henry, 100, A disqualified juror is cause for new trial ; Wharton's Digest.

### Affidavit of disqualification of juror sufficient.

9 Pirtle's Digest 112, Affidavit of party sufficient; 1 Marsh 213, Bratton v. Bryant; 3 J. J. Marsh 526, Ewing v. Price; 2 Pirtle's Dig. 121, Art. 124; Wharton's Dig. 407, Bratton v. Bryant ; 1 Marsh 212, The party opposing a motion may adduce counter evidence.

### In arrest of judgment.

Precept—3 Coke on Littleton 504; Precept defective—18 Johns. 212, People v. McKay.

### Indictment.

Wharton's Digest 171, Caption of—1 Saunders 250, note.

### Vacancy in the office of Attorney General.

Wharton's Digest 177, State v. Simms ; 1 Term Rep., No Attorney General, criminal may be discharged.

GEORGE W. OLNEY, Attorney General, for the defendants in error.

SMITH, Justice, delivered the opinion of the Court:

The prisoner, Guykowski, was indicted for the *murder* of one Nelson Ryall, at a special term of the Fayette Circuit Court, held under the provisions of the ninth section(2) of " *An Act regulating the times of holding the Supreme and Circuit Courts,*" and for other purposes, approved 15th February, 1835, which authorizes the holding of such terms, at the request of a prisoner charged with a capital offence, when he may demand a speedy trial.    At this special term, the Court ordered a precept for sum-

(1) Gale's Stat. 395.        (2) Acts of 1835, 171; Gale's Stat. 187.

moning a grand and petit jury, to be filed *nunc pro tunc,* in consequence of the loss of the first one, by the sheriff.

The counsel for the prisoner challenged the array of the grand jury for this cause, but subsequently withdrew his objection. The Attorney General, on behalf of the prosecution, renewed it, and the Court overruled the exception. The prisoner then challenged some of the grand jurors for cause. After the indictment was found, the prisoner applied for, and obtained, a change of venue, to the Circuit Court of the county of Clinton. He was there tried and convicted at a regular term of that Court. After conviction, his counsel moved for a new trial, and in arrest of judgment, both of which motions were overruled, and sentence of death pronounced. A writ of error having been sued out, and a supersedeas awarded, in pursuance of the 189th section of the "*Act relative to Criminal Jurisprudence,*"(1) and the case being before the Court for revision, it is now assigned for error,—

1. That the Circuit Court ought to have awarded a new trial, because one of the jurors, who tried the cause, was an alien at the time of the trial, and therefore not qualified to serve as a juror : such alienage being at such time unknown to the prisoner.

2. That the motion in arrest of judgment, ought to have prevailed, because the person signing the indictment, was not the Attorney General, nor authorized by law to sign the same. Also, because it is not set forth in the body of the indictment, that the grand jury had the authority to find the same; because it is not averred in the indictment that the Court was called specially for the trial of the prisoner ; and because a precept for summoning the grand jury at the special term of the Fayette Circuit Court, had been filed *nunc pro tunc.*

The delicate and responsible trust which this tribunal is called on to exercise, in reviewing cases of the character under consideration, sufficiently admonishes it of the caution and prudence with which such re-examinations should be conducted; and that, where there is every reason to believe, from an inspection of the proceedings, that the intrinsic merits of the case have been fairly ascertained and determined, the adjudication of the inferior tribunal should not be disturbed, unless it satisfactorily appear that some settled and well established principle of criminal law, or rule of proceeding, has been clearly violated.

While the justice of the rule here asserted is admitted, and an adherence to its principles conceded, it is of equal importance that the rights of the accused should be protected and preserved, and the essential forms of law prescribed for the mode of conducting the ascertainment of his guilt, should be carefully observed and followed. A departure from them could not fail to produce difficulties and doubts. A recognition of a departure, in

(1) R. L. 217; Gale's Stat. 235.

one case, might lead to the adoption of another, and finally, those barriers, which are guaranties for the regular and impartial conducting of criminal cases, might be frittered away, and cause interminable perplexities, and possibly eventuate in gross injustice. It is much easier to require the observance of the mandates of the law, than to determine in what cases they may safely be dispensed with.

It is, therefore, more proper, and more consonant to reason and justice, to require a substantial adherence, than to suffer innovations upon the known and positive rules prescribed by law, for the regular conducting of causes. The justice of these grounds is as clear and apparent, as those which are founded on principles of humanity, and by which the administration of criminal law has been marked, declare that the accused stands on all his rights, and waives nothing which is irregular, and more especially so, when life is in question.

Testing the present case by the principles here recognised, and applying them to the facts of the case, it will be perceived that the first objection presents grounds deserving attentive and grave consideration. The bill of exceptions discloses the fact, that after the conviction of the prisoner, an application for a new trial was made, based on his deposition, which disclosed the fact that John Burnside, one of the jurors who had rendered the verdict, was an alien, as he had been then, for the first time, informed, and believed, and that such information came to his knowledge since his conviction. On this deposition the enquiry arises, 1st, Whether the juror, admitting the fact of alienship to be true, was an unqualified juror, and if so, whether the verdict was not void for that cause. 2d, Whether the deposition of the prisoner was sufficient evidence of the fact of alienship, and was admissible as evidence of the fact. To determine the first enquiry, as to the competency of the juror, we must recur to the act prescribing the mode of summoning grand and petit jurors, and defining their qualifications and duties, in force 1st June, 1827.(1) By that act it is declared, that "All free white male taxable inhabitants, in any county in this State, being natural born citizens of the United States, or naturalized according to the Constitution and laws of the United States, and of this State, between the ages of twenty-one and sixty years, not disabled, by the commission of crime, or bodily infirmity, and being of sound mind and discretion, shall be deemed and considered competent persons to serve on grand and petit juries."

From this section there can be no doubt whatever, that an alien is not qualified to serve as a juror in any case. The declaration that certain qualifications are necessary to be possessed by the individual, to constitute him a juror, necessarily disqualify

(1) R. L. 378; Gale's Stat. 395.

the person who does not possess such qualifications, from being one. It is not a mere personal exemption, from service, which the individual may claim, but an entire exclusion from such service. The persons who are entitled to personal exemption, from service, are enumerated in the act. An alien is not capable in law to discharge the functions of a juror. In a cause where an alien serves as a juror, he cannot be considered the lawful juror whom the sheriff is called on to summon for the trial of the cause. He is not, in the language of the common law, free from all exception, but is prohibited from sitting as a juror; and although he is not challenged, and the accused may be considered as tacitly consenting by not objecting to his serving on the jury, still he cannot be rendered competent to serve by the presumed assent of the accused, because the law has not admitted him to act in such capacity.

It may, also, be fairly presumed, that it was incumbent on the prosecution, to take care that the jurors were competent and legally qualified according to the provisions of the law, under which they were chosen and selected.

The verdict cannot be considered as the unanimous opinion of twelve persons capable in law of determining the law and the facts submitted to their consideration and decision; but as the opinion of eleven only; the other being disqualified from being one of their number. The verdict is a nullity, not having been obtained as the law has required.

The second branch of the question under consideration, whether the deposition of the prisoner was sufficient evidence of the facts of alienage, and was admissible to prove such fact, can be determined only from the circumstances which appear in the case, and the reasons which may be drawn from the admission of such depositions in other cases. In civil cases, the deposition of the defendant of the existence of particular facts, before unknown, and of newly discovered evidence, for the purpose of moving for a new trial, is frequently received, and the admissibility thereof has not, we believe, been questioned; and numerous new trials have been granted on facts disclosed by such depositions. If this rule obtains, in civil cases, we do not perceive any objection to it in criminal ones, subject to the right on the part of the prosecution, to disprove by counter evidence, the truth of the facts alleged by the accused.

It may be urged that a party, after conviction of a flagrant crime, for the purpose of obtaining another trial, or the procrastination of the judgment of the law, would not hesitate to resort to these means, as an expedient for the accomplishment of an object so desirable to him; and that perjury might readily be conceived to be the consequence of the adoption of such a rule. This reasoning is not just, because although the party may make

2o

Guykowski *v.* The People.

his application founded on his own deposition, it does not follow, by any means, that this deposition is to be conclusive. The facts alleged, as the grounds of the application, being open to be contradicted by the prosecution, if false, might be shown to be so, and hence it is not rational to suppose, that the application would be made on an alleged state of facts, easily disproved, or rendered doubtful by counter evidence, because of the certainty of failure in all such cases.

In the case before us, how easily could the prosecution have produced the juror, Burnside, or his deposition, and proven his non-alienship, if such was the fact: and, in case of his absence, the evidence of his neighbors to the same fact. This, we presume, would have readily occurred to the prosecution, as the most efficient means of removing the alleged objection to the verdict. Not having done so, is it not the fair inference therefrom that the deposition of the prisoner is true? This deposition was, doubtless, only *prima facie* evidence of the fact; but does not the failure or omission to produce the proof so entirely within the ability of the prosecution to adduce, (if the deposition of the prisoner was untrue in point of fact,) render it almost conclusive? We must presume, then, under this state of facts, that the alienship of the juror would have been confirmed by the juror himself; otherwise *it seems to us,* that an attempt would have been made to disprove it, by some of the means suggested.

This deposition of the juror in support of his verdict, on a point entirely disconnected with his acts, or the motives for his conduct, as a juror, would not have been objectionable, on the grounds on which it has been decided that a juror's testimony cannot be received to impeach his verdict.

It may also be urged, that the exception to the juror, is technical, and that, as no objection appears on the merits, the conviction should be sustained.

We cannot think that an objection to a trial and conviction produced by the agency of one whom the law has positively prohibited from sitting as a juror in a cause, can be considered technical. It is a matter of substance, and may be considered an enquiry whether one who is excluded, has taken on himself to pronounce on the law and the facts of the case, without, not only, the authority of law, but against such authority.

The presumed assent of the accused to the juror's being one of his triors, cannot surely invest the juror with the exercise of a power which the law has declared him incapable of exercising. Suppose the case of a female imposed on the Court and parties without their privity, or even with it: Could such a person be a competent juror? Would not all deny the affirmative, in such a case? And although such an opinion would be rendered with-

out hesitation, the disqualification in this case is not less conclusive.

It is a false supposition, to conclude, that the silence of the accused could confer a power on the person sworn as the juror, to sit and determine the cause, when his inability to legally act is so apparent. Suppose that the alienage of the juror had been developed to the Court, when the juror was called, and about to be sworn, can it be imagined that the Court would have hesitated to have instantly set him aside, and declared him incompetent? We think not. Does then the time of the discovery of the juror's incompetency, alter the principle, or the reason of the decision? In Massachusetts it has been decided, that a person who was a member of the grand jury, and sat and found the bill of indictment, in a criminal case, was an incompetent juror on the trial by the petit jury, on the same indictment, and a new trial was granted for such a cause. There are, also, many cases where partial jurors, who had formed and expressed opinions on the guilt of the accused, before trial, having rendered verdict against him, have been set aside, the knowledge of the cause of objection not having been known or discovered until after conviction.

In the case of the Indian Nomaque, decided at the December term of this Court in 1825,(1) we have said that "The prisoner, in a capital case, must be considered as standing on all his rights. He cannot be considered as waiving anything, nor could his counsel do it for him;" and the case of the People *v.* McRay,(2) is cited, as conclusive authority to sustain such position. In this case, which was a criminal one; the venire was without a seal, and although the prisoner had challenged many of the jury who were summoned under it, still the Court held, in that case, that it was a nullity, and granted a new trial. The principles on which these cases were decided, are applicable to the present, and apply with full force.

The argument of inconvenience which might result from granting a new trial, ought not to be addressed to those whose duty compels them to declare the very law of the case, and more especially should its influence be unfelt where no discretion is reposed.

Much as this Court may regret the necessity which imposes on it the duty of reversing a decision, where the trial on all the facts may be presumed to have been not only deliberately and impartially had, but freely investigated, still it is bound to declare the law as it is conscientiously believed to exist, without regard to the possible inconvenience which may result from a new trial.

The objections in arrest of judgment are considered not tenable: and if as formal ones, they possessed grounds of considera-

(1) Breese 109.          (2) 18 Johns. 212.

tion, a part of them should have been raised before pleading to the indictment, as the 153d section of the criminal code requires. That portion of them which were made before pleading, which include the objection to the precept, are considered inconclusive. The precept for the grand jury, which was filed *nunc pro tunc,* was for the benefit of the prisoner, at whose instance the Court had been assembled, and as he challenged the array, and afterwards withdrew it, he must be considered as regarding the objection without force.  It was but to render more certain and perfect the proceedings instituted for his benefit, and which had been adopted for the speedy trial which he had sought.

For the reasons assigned, we are of opinion that the judgment of the Circuit Court of Clinton county should be reversed, a supersedeas to the execution of the sentence of death awarded, and a new trial be had in the Clinton Circuit Court, and that a *venire facias de novo* be awarded by that Court, for such purpose.

*Judgment reversed.*

*Note.* See the case of John Stone *v.* The People, decided at June term, 1840, where it is held, that irregularities in summoning a grand jury, must be taken advantage of by a challenge of the array, or a motion to quash the indictment found by the jurors.

Objections to jurors, if known, must be made before trial. Wickersham *v.* The People, *Ante* 128.