The opinion of the court was delivered by
Valentine, J.:
This was a criminal prosecution for murder in the first degree. The defendant was convicted and sentenced, and he now appeals to this court. Only two questions are presented to this court: First, it is claimed that the information upon which the defendant was prosecuted does not state facts sufficient to constitute the offense of murder in the first degree; second, it is claimed that two incompetent jurors, along with ten other jurors, were allowed to hear and determine the case.
1. Murder; suffloimt informaWith reference to the first question we would say that, under the decisions of this court, we think the information was sufficient; and especially so, as the question of . . ’ . . , _ its insufficiency was not raised until after verdict. It described the killing, and clearly alleged that it was done willfully, unlawfully, feloniously, and with deliberation, premeditation, and malice aforethought. We do not think that counsel for defendant relies with any degree of confidence upon this point; and hence, without further consideration thereof, we shall pass to the next question.
The next question is seemingly more difficult, for there are authorities which seem to sustain the position for which counsel for the defendant contend, though we think the weight of authority is on the other side. Two of the jurors who found and rendered the verdict in this case had, during the war of the rebellion, voluntarily borne arms against the government *583 v of the United States, and their consequent disabilities have never been removed. It is clear, therefore, that these two jurors are not electors of the state of Kansas; and for that reason, inferentially, they are not proper persons to serve as jurors. There is no provision, however, of either the constitution or the statutes, that in terms makes such persons incompetent to serve as jurors; but the statutes with reference to the qualifications of jurors would seem, inferentially, to authorize only electors to serve in such capacity. These two persons were competent in every respect to serve as jurors in this case, except that they were not electors of the state of Kansas. We would think that if any objection had been made to these two persons serving as jurors at any time before the jury were impanneled and sworn, that the objection should have been sustained, and these two j urors discharged; but no such objection was made. It would seem that neither of the parties nor their counsel had any knowledge before the trial that these two persons were not electors, or that they were not competent to serve as jurors. And indeed it would seem that neither the parties nor their counsel made any effort to ascertain these facts. From anything appearing in the case up to the time when the defendant made his motion for a new trial, and in arrest of judgment, it would seem that both parties and their counsel were entirely willing that these two persons should serve as jurors, whether they were legally competent to serve or not. After the trial was completed, and after the defendant was found guilty, as charged in the information, he made a motion for a new trial, and also a motion in arrest of judgment, upon the ground, among others, that these two jurors were not competent to actas jurors; and upon these two motions the question of their competency was for the first time raised in the trial court.
2 jurors not |ection*toob' We think the question was raised too late. ,. We think the defendant, by waiting until after the verdict was rendered before he attempted to raise the question, waived all right which he otherwise would have had to raise any such question. The mere fact of not being an elector is not an absolute and positive disqualifica *584 tion of a person to serve as a juror. It is simply a ground for challenging him before the jury are impanneled and sworn; and if the parties at the time of impanneling the jury choose to waive their right to challenge for that cause, they cannot complain afterward; and where the parties, as in this case,make no effort to ascertain whether a juror is an elector or not, and if it should afterward be ascertained, as in this case, that he was not an elector, the parties will not be allowed to say that they had no knowledge that he was not an elector. By failing to attempt to ascertain the fact before the jury are impanneled, they waive all right to make any complaint upon that ground afterward. That parties may waive the incompetency of jurors has been settledby numerous authorities, and in every class of eases. It has been so settled in civil cases, where the parties knew at the time of the impanneling of the jury that the juror was incompetent. (Glover v. Woolsey, Dudley’s Rep. 85; Pittsfield v. Barnstead, 40 N. H. 478; Selleck v. Sugar Hollow Turnpike Co., 13 Conn. 453, 459; 20 Conn. 89; 22 Conn. 193 to 195; 23 Conn. 117; Wallace v. Columbia, 48 Me. 436; Fox v. Hazelton, 27 Mass. 275.)
It has also been held that the right to object because of the incompet.ency of a juror, may be waived in civil cases, even where the parties do not know of such incompetency until after the. trial. (Amherst v. Hadley, 18 Mass. 38; Jeffries v. Randall, 14 Mass. 205; Daniel v. Guy, 23 Ark. 51.)
And in criminal cases, even in prosecutions for murder, where the facts are known, an objection to the competency of a juror comes too late, if it is made after verdict. See the following capital cases: The People v. Coffman, 24 Cal. 230; Lisle v. The State, 6 Mo. 426; Keener v. The State, 18 Ga. 194.
It has also been held in criminal cases, where the parties did not know the facts, that an objection to the competency of a juror must be. made before the verdict is rendered, or it will be too late. (The King v. Sutton, 8 B. & C., 417; Gillespie v. The State, 8 Yerg. 507.)
And the same rule seems to apply in capital cases as in others. (Chase v. The People, 40 Ill. 352; Costly v. The State, *585 19 Ga. 614, 628; State v. Bunger, 14 La. An. 465; State v. Patrick, 3 Jones [N. C.] L. 443; State v. Bone, 7 Jones [N.C.] L. 121.)
See also in this connection, Montgomery v. The State, 3 Kas. 263. This was a criminal case, though not a capital case.
The principal authorities upon the other side are as follows: The State v. Babcock, 1 Conn. 401; Guykowski v. The People, 2 Ill. (1 Scam.) 476; Schumaker v. The State, 5 Wis. 324; The State v. Groome, 10 Iowa, 309; Rice v. The State, 16 Ind. 299; Hill v. The People, 16 Mich. 351.
The case of The State v. Babcock, 1 Conn. 401, has been virtually overruled by the later Connecticut decisions above referred to. -And the case of Guykowski v. The People, 2 Ill. (1 Scam.) 476, has been actually overruled by the later Illinois decision above referred to. In the ease of The King v* Sutton, 8 B. &. C. 417, it is held that “alienage is a ground of challenge to a juror, and if the party has an opportunity of making his challenge, and neglects it, he cannot afterward make the objection.” In the case of Chase v. The People, 40 Ill. 352, it is held that “alienage in a juror is not a positive disqualification — it simply enables him to excuse himself if he chooses to claim the exemption, or it is a ground of challenge, and nothing more.” In the case of Costly v. The State, 19 Ga. 614, it is held that “the non-residence of a juror, being but a cause of challenge propter defectum, can and consequently must be made by the prisoner before the juror is sworn, and it makes no difference whether such want of qualification was known or unknown at the time the juror was sworn.” In the ease of The State v. Bunger, 14 La. An. 465, it is held that “where a juror can be challenged for cause, the right must be exercised before the juror is sworn; and a verdict cures the defect.” In the case of The State v. Patrick, 3 Jones (N. C.) L. 423, it is held that “it is too late after a juror has been taken and accepted by the prisoner, and has served on the trial, to except to him for incompetency.” In the case of The State v. Bone, 7 Jones (N. C.) L. 121, it is *586 held that “the prisoner has no right to postpone showing cause of challenge to a juror and have him stand aside until the panel is finished.”
The last five cases cited are all capital cases, and the case cited from Barnewall & Cresswell was an indictment for a conspiracy. In the case of Gillespie v. The State, 8 Yerg. (Tenn.) 507, it is held that “ it is no ground for a new trial in a criminal case, that one of the jurors trying the issue was one of the grand jury who found the bill of indictment. The objection to the juror must be made by challenge before he is sworn, or it is waived.”
As before stated, the fact that said two jurors were not electors was not a positive and absolute disqualification to them to serve as jurors, but only a ground for challenge. If it were a positive disqualification, then the trial would have been a nullity — precisely the same as though it had been had before ten men only; and if the verdict had been in favor of the defendant, the state might have treated the verdict as no verdict, and put the defendant upon trial again for the offense charged against him. We suppose that no one will claim that this could be done. The fact that said two jurors were not electors could not have prejudiced any of the substantial rights of the defendant. Undoubtedly they tried the case as fairly and impartially as though they had been electors. If the disqualification of the jurors had been such as would have predjudiced any of the substantial rights of the defendant, it might be that the defendant would have a right to a new trial because of such disqualification; but where the disqualification does not prejudice any substantial rights, we do not think that any new trial should be granted because of the disqualification. The defendant, by failing to object to the jurors before they were sworn, and by failing to attempt to ascertain whether they were electors or not, waived the disqualification, and rendered the jurors competent to hear and determine the case.
The judgment of the court below will be affirmed.
All the Justices concurring.