No. 52,445

STATE OF KANSAS, *Appellee,* v. JOHN H. FOLKERTS, *Appellant.*

(629 P.2d 173)

Opinion filed June 10, 1981.

*Russell Shultz,* of Shultz, Fisher, Monnat & Shultz, of Wichita, argued the cause and *Daniel E. Monnat* and *Sheila Jones Floodman,* of the same firm, were with him on the brief for appellant.

*Beverly Dempsey,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: John H. Folkerts appeals from his conviction by a jury of aggravated kidnapping (K.S.A. 21-3421), rape (K.S.A. 1980 Supp. 21-3502), and aggravated sodomy (K.S.A. 21-3506).

In the early morning hours of March 16, 1979, Dana Bennett

was accosted by a white male in the parking lot of the Fireside Lounge in Wichita. The man held a knife to her throat, forced her to get into his automobile and then drove a few blocks into a residential area where she was forcibly raped and sodomized. Ms. Bennett identified Folkerts from photographs shown her by officers of the Wichita police department. Folkerts was arrested and subsequently convicted. Additional facts will be developed as the various issues on appeal are considered.

Appellant was first brought to trial before Judge Helsel on February 20, 1980. After two and one-half days of trial, Judge Helsel was informed by a court employee that one of the jurors hearing the case was a recently convicted felon. A hearing in chambers was held in which the judge advised counsel of this development. The State was prepared to proceed with the trial with only eleven jurors while the defendant insisted that the trial proceed with the twelve jurors who had been selected. The court, on its own motion, over the objections of the defendant, declared a mistrial and discharged the jury. On May 27, 1980, the case came up again for trial before Judge Noone. Prior to trial defendant moved to be discharged on the grounds that a retrial would constitute double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution, Section 10 of the Kansas Bill of Rights and K.S.A. 1980 Supp. 21-3108. The motion was overruled by Judge Noone, the case proceeded to trial and defendant was convicted.

Appellant's initial point on appeal is the trial court committed error in overruling his motion for discharge based upon double jeopardy. Dennis Marsh, one of the jurors sworn to hear the first trial of this case, was a convicted felon, having recently entered a plea of guilty to felony theft. It is the position of the appellant that it was error to declare a mistrial over his objections, that the first trial should have proceeded to a verdict and that the second trial deprived him of his constitutional and statutory rights not to be twice placed in jeopardy for the same crime. There can be no doubt that the defendant Folkerts was placed in jeopardy during his first trial.

"A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or where the case is tried to the court without a jury, when the court has begun to hear evidence." K.S.A. 1980 Supp. 21-3108(1)(c).

The question before this court is whether such former jeopardy bars a second trial under the circumstances of this case. We think not. In *State v. Bates,* 226 Kan. 277, 597 P.2d 646 (1979), this court explored at length the law of double jeopardy as it exists in Kansas today. There is no need to repeat here what was so recently set forth in *Bates.*

At the outset, appellant contends the mistrial was invited by a lack of diligence on the part of the trial court and the district attorney in not discovering that Marsh was a convicted felon prior to the time the jury was sworn. In Sedgwick County several hundred jurors may be called for service in several divisions of the court at the same time. One of the district judges, in an orientation session, addresses the potential jurors as a group and explains some of the history of the jury system and advises them of the constitutional and statutory qualifications necessary to sit as a qualified juror. This orientation session is not ordinarily made a part of the record. Assuming the array of potential jurors were advised that a recently convicted felon could not sit on the jury, Marsh did not come forward and volunteer information as to his criminal background. After the necessary number of prospective jurors were sent to the courtroom of Judge Helsel, the formal voir dire was held. Neither the State nor defense counsel specifically inquired of Marsh whether he had a felony record. Under such circumstances, appellant contends that the State, with its vast and superior resources, had a duty to determine the criminal records of the prospective jurors where names were available on computer lists furnished the district attorney. We find no merit in this argument. Voir dire examination of the individual jurors and the entire panel as a group was available to both counsel and it cannot be said that the failure of the trial court and State's attorney to discover the criminal background of Marsh would preclude defendant's second trial.

K.S.A. 43-156 provides:

"No person shall be excluded from service as a grand or petit juror in the district courts of Kansas on account of race, color, religion, sex, national origin, or economic status. Every juror, grand and petit, shall be a citizen of the state, resident of the county and possess the qualifications of an elector as now, or in the future established."

K.S.A. 43-158 provides:

"The following persons shall be excused from jury service: (a) Persons unable

to read, write and understand the English language with a degree of proficiency sufficient to fill out a jury questionnaire form prepared by the commissioner;

(*b*) persons under adjudication of incompetency;

(*c*) persons who within ten (10) years immediately preceding have been convicted of or pleaded guilty, or *nolo contendere,* to an indictment or information charging a felony."

In overruling the defendant's motion for discharge on the grounds he was being twice placed in jeopardy for the same offense, Judge Noone found that Judge Helsel was faced in the first trial with determining whether manifest necessity required the aborting of the trial. The rationale for the declaration of a mistrial because of a manifest necessity to do so has been set forth previously in *State v. Bates,* 226 Kan. 277, and *Illinois v. Somerville,* 410 U.S. 458, 35 L.Ed.2d 425, 93 S.Ct. 1066 (1973).

Appellant contends there was no manifest necessity in the present case and relies heavily on the early cases of *State v. McCombs,* 163 Kan. 225, 181 P.2d 473 (1947), and *State v. Jackson,* 27 Kan. 581 (1882). Appellant argues that the conditions for jury service set forth in K.S.A. 43-156 and 43-158 are not disqualifications but merely exemptions or exclusions which may be used as a basis for challenge or raised by the individual juror in seeking to be excused from jury duty. Based upon *McCombs* and *Jackson* it is argued that any verdict reached by the first jury would not have been void even though a felon participated as a member of that jury. Hence there was no manifest necessity to declare the mistrial over the objections of the defendant.

In *McCombs* the defendant's trial was properly held in Logan County and after the verdict it was discovered one of the jurors was a nonresident of the county, having recently moved to an adjoining county. The court held that the objection to the qualifications of the juror came too late, the verdict was not void and the conviction was affirmed.

In *Jackson* two of the jurors who decided the case were found, after the verdict, to have borne arms against the government "during the war of the rebellion" and therefore they were not qualified to be electors of the State of Kansas and accordingly were not competent to serve as jurors. As in *McCombs* the court held that the defendant had waited too long to raise the question of the qualifications of the jurors and the defendant's conviction was affirmed. Appellant argues that as Marsh's status became known during trial and appellant did not object to continuing

with Marsh on the jury, the court committed error in declaring the mistrial and the case should have proceeded to a verdict which, based upon the rationale of *Jackson* and *McCombs,* would have been a valid verdict.

At first blush the argument and position of the appellant is persuasive but we believe there is a fundamental difference between the case at bar and the cases relied upon by the appellant. K.S.A. 43-158 states that certain persons *"shall* be excused from jury service" and then lists three categories of persons who, for obvious reasons, would be unfit to serve as jurors. To argue that the right to be excused from jury duty is merely a personal privilege inuring to the benefit of the individual juror, to be exercised by the juror, flies in the face of the statute as well as common sense. K.S.A. 43-159 includes numerous other grounds for which a person *"may* be excused from jury service" and is clearly discretionary with the court.

The doctrine of "manifest necessity" has long been a part of our law. In *State v. Hansford,* 76 Kan. 678, 92 Pac. 551 (1907), a mistrial was declared over the objections of the defendant when it was discovered during trial that one of the jurors had a definite prejudice which he felt would not allow him to give one of the parties a fair trial. Hansford objected to being retried on the grounds of double jeopardy. This court stated:

"When an accused is placed upon trial, before a competent court and jury, upon a sufficient information or indictment, jeopardy is said to attach, and he cannot be put in jeopardy a second time unless the jury be discharged from rendering a verdict by reason of some overruling necessity or the consent of the defendant. In this instance there was neither express nor implied consent, and the question remains, Did the interruption of the trial and the continuance of the prosecution at a later time subject the defendant to a second jeopardy, or was it any more than the continuance of the same jeopardy? He insists that there was no imperative necessity for discharging the jury from rendering a verdict, nor sufficient reasons to warrant the court in declaring a mistrial. The disclosure of the juror revealed the fact that he was disqualified to sit in the case and that the trial was proceeding with only eleven qualified and competent jurors.

"It is conceded that the sickness or other physical disqualification of a juror or a judge which would unfit him for the performance of his duties would constitute a manifest necessity for a discharge of the jury. He would be equally disqualified by insanity or other mental disability, and when it is satisfactorily shown to the court by proper evidence that a juror is not in a fit condition of mind and has not the qualifications which the law requires it is clearly within its power and discretion to discharge the jury and declare a mistrial." pp. 681-682.

"There is a contention that the statute prescribes the only grounds which justify

the discharge of a jury from rendering a verdict, and that the ground upon which the discharge was based in the present instance is not one of those enumerated in the statute. In behalf of the state it is plausibly argued that the statute does not undertake to specify all of the instances which would justify the discharge of a jury; that under the constitutional provision as to jeopardy, and the common-law rules in vogue when it was adopted, a jury may be discharged not only for reasons named in the statute but whenever it appears to the court that there is a manifest necessity for the act or that the ends of justice would otherwise be defeated." p. 685.

In the early case of *Thompson v. United States,* 155 U.S. 271, 39 L.Ed. 146, 15 S.Ct. 73 (1894), the Supreme Court held:

"Courts of justice have authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and the defendant is not thereby twice put in jeopardy, within the meaning of the Fifth Amendment to the Constitution of the United States." Syl. ¶ 1.

In 22 C.J.S., Criminal Law § 259, we find:

"*Disqualification of juror.* Where the jury are discharged after the trial has begun, by reason of the fact that a juror has become disqualified, or because he was disqualified when he was sworn, there is neither an acquittal nor former jeopardy, although accused offers to waive the disqualification and to proceed with the jurors on the panel, or with a jury of less than the legal number." pp. 677-678.

In the more recent case of *Illinois v. Somerville,* 410 U.S. 458, the court quotes from an earlier case, *Wade v. Hunter,* 336 U.S. 684, 93 L.Ed. 974, 69 S.Ct. 834 (1949), as follows:

" 'The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of the jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. *What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.*' " (Emphasis in original.) 410 U.S. 470.

Appellant insists that K.S.A. 22-3423 establishes the exclusive grounds upon which a trial court may grant a mistrial in a criminal case and that K.S.A. 1980 Supp. 21-3108 defines and limits double jeopardy and the situations in which it applies. While the statutes are comprehensive in scope, we do not believe they eliminate the inherent power of a court to declare a mistrial when justice so requires and there exists a manifest necessity to do so. *State v. Finley,* 208 Kan. 49, 490 P.2d 630 (1971). The constitution and statutes have established certain qualifications for a juror in Kansas and the lack thereof goes to the very ability of such a juror to render a fair and impartial verdict based upon an intelligent understanding of the trial proceedings and the evidence produced. No one would argue that the discovery of an illiterate or adjudicated incompetent person on the jury would not be grounds for a mistrial and the legislature has seen fit to include convicted felons in the same category. Certainly the presence of a person lacking any of the statutory qualifications would be suspect in his or her ability to render an intelligent, fair and impartial verdict to both parties in a criminal trial.

We are not faced with, and we need not here decide, whether a verdict rendered by a jury which includes a juror who does not meet the qualifications would be valid under today's statutes and constitutional provisions as was determined in *McCombs* and *Jackson.* What we do hold is that the discovery during trial that a member of the jury does not meet the statutory and constitutional requirements may constitute such manifest necessity as to warrant a mistrial. The presence of a recently convicted felon on a jury in a criminal case may deprive the State of its right to a fair and impartial jury and be grounds for the trial court to exercise its discretion and declare a mistrial. We find no abuse of that discretion by Judge Helsel.

Appellant's second point on appeal is that evidence of a violation of the Kansas trucking laws was improperly admitted, prejudicially construed and commented upon by the prosecutor and inadequately instructed upon. In the late afternoon of March 15, 1979, appellant, an over-the-road truck driver, was stopped for speeding by the Kansas Highway Patrol near Salina. As required, the patrolman checked the logbooks of appellant and discovered that they had been filled out in advance to show appellant was in Colorado on that date. This was evidently done to cover up the

fact that appellant was driving more consecutive hours than allowed and was actually driving into Wichita when he should have stopped for the night in Colorado. When appellant was first interrogated by police investigating the attack on Ms. Bennett, appellant said he could not recall where he had been and would have to check his logbooks. The falsified books, of course, tended to show he was in Colorado and presumably could not have committed the attack in Wichita. Counsel for the State assumed the logbooks had been filled out after the attack took place to cover up the fact that Folkerts could easily have been in Wichita. For this reason the State sought to introduce the falsified logbooks pursuant to K.S.A. 60-455 as tending to show motive, opportunity and knowledge. After hearing a motion in limine, the trial court held the logbooks could be admitted for those limited purposes. It was not until during examination of the patrolman that the State and the court became aware of the fact that the logbooks had been falsified sometime prior to the attack on Ms. Bennett. The trial judge, although recognizing that the original decision to admit the logbooks was made in light of an erroneous representation of the facts, nevertheless, over the objection of the defendant, allowed the admission of the books under K.S.A. 60-455, for the limited purpose of showing opportunity. While the presence of the appellant in Salina around 5:00 p.m. on March 15, 1979, could have been shown by testimony of the patrolman without the introduction of the falsified logbooks, we find no reversible error in their admission.

Next appellant urges reversible error because of prejudicial comments the prosecutor made during final argument. Although appellant's character had not been placed in issue, and in violation of the known limited purpose for which the logbooks were admitted, the prosecutor during the final closing argument of the State said to the jury, "Ladies and gentlemen, if a person is to lie about something as insignificant as a logbook . . . ." A defense objection was immediately sustained. The comment, by what appears to have been an inexperienced and over-zealous prosecutor, was clearly inappropriate and constitutes error. We cannot presume, however, that she acted intentionally and in bad faith. In view of the overwhelming evidence against the appellant, we find that the prosecutor's comment was harmless error. K.S.A. 60-2105.

Finally, appellant contends that the limiting instruction given as to the admission of the logbooks was insufficient. The trial court instructed the jury:

"You are instructed that evidence has been admitted in this case to show the commission by the Defendant of certain traffic offenses and violations of regulations pertaining to common carriers in the trucking industry. You are instructed that you are not to consider such evidence as the basis for an inference that he committed any of the crimes charged in this case. Such evidence may be considered by the jury only for the purpose of determining opportunity, and for no other purpose."

The instruction was adequate to properly advise the jury.

Appellant's third point on appeal is that the court committed error in not sustaining appellant's motion for acquittal for failure of the State to adequately prove the element of identity. After being confronted with the falsified logbooks, appellant admitted to police that he had been at the Fireside Lounge the night in question. He admitted he had driven a car that night which matched the description of the one described by the victim, although appellant contended he loaned the car to some person who approached him in the lounge and wanted to borrow his car. This person was never identified. The victim made a positive identification of the appellant from mug shots furnished by the police and also made a positive in-court identification. The evidence was sufficient to meet the test of *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979).

Next appellant contends the court committed error in replacing one of the jurors with an alternate without an in-court, on the record examination of the juror. During a weekend recess one of the jurors contacted Judge Noone and advised of her grandfather's death and her need to attend the funeral out of the state. Fortunately, after the experience at appellant's first trial, the court had taken the precaution of having two alternate jurors selected. Judge Noone excused the juror so she could attend the funeral and appointed one of the alternates to take her place. Our statute K.S.A. 22-3412(3) is similar to F.R.Cr.P. 24(c) and under the federal cases it is well established that the substitution of an alternate for a juror for reasonable cause is within the prerogative and discretion of the trial court. *United States v. Ellenbogen,* 365 F.2d 982 (2nd Cir. 1966), *cert. denied* 386 U.S. 923 (1967). See also, 2 Wright, Federal Practice and Procedure: Criminal § 388, and Annot., 10 A.L.R. Fed. 185. The point is without merit.

Appellant's final point on appeal is that the court committed reversible error when it failed to strike juror Sue M. Spade for cause under K.S.A. 22-3410, or as a matter of discretion under K.S.A. 43-159(*a*), (*d*) or (*e*). Both the State and the defense counsel asked that Ms. Spade be stricken for cause but the judge refused to do so. A careful review of the voir dire examination of Ms. Spade reveals that she was a thoroughly reluctant juror who did not wish to sit on a case involving sexual activity and violence. However, she repeatedly maintained she was not prejudiced against either party and could act impartially.

In *State v. Sanders*, 223 Kan. 273, 275-276, 574 P.2d 559 (1977), we stated:

"Under K.S.A. 22-3410(2)(*i*), before a juror should be excused for cause the court must determine that the juror's state of mind with reference to the case or any of the parties is such there is a doubt that the juror can act impartially and without prejudice to the substantial rights of any party.

"Whether a prospective juror is qualified to sit in the trial of a case is a question for determination by the trial court and its ruling will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion. (*State v. Amodei*, 222 Kan. 140, Syl. ¶ 4, 563 P.2d 440.)"

We find no error in failing to strike Ms. Spade for cause under K.S.A. 22-3410 and no abuse of discretion under K.S.A. 43-159.

The judgment is affirmed.