Nos. 81,173
81,174

STATE OF KANSAS, *Appellant,* v. LILLIAN K. SNODGRASS, TORRE CONWAY, and HEALTHCARE ORGANIZATION PROMOTING EXCELLENCE, INC., *Appellees.*

(979 P.2d 664)

Opinion filed April 16, 1999.

*R. Douglas Sebelius*, Norton County Attorney, argued the cause and was on the brief for appellant.

*Andrew E. Busch*, of Busch & Johnson, of Wichita, argued the cause and was on the brief for appellees.

*Kurt P. Kerns*, of Ariagno & Kerns, L.L.C., of Wichita, was on the brief for *amicus curiae* Kansas Association of Criminal Defense Lawyers.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals, pursuant to K.S.A. 22-3602(b)(1), from an order of the district court dismissing indictments returned by a grand jury against Lillian Snodgrass, Torre Conway, and Healthcare Organization Promoting Excellence, Inc., (HOPE). The district court found that the grand jury was not lawfully impaneled. The State also appeals from the district court's order changing venue.

At the request of the Norton County Attorney, the district court ordered the clerk to summon 36 people for possible service as grand jurors. The order states that the subject for grand jury con-

sideration would be "the commission of offenses of making a false writing and criminal defamation."

The names on lists of registered voters and licensed drivers were numbered, the numbers were placed in a wheel, and numbers were drawn to select who would be summoned. Before appearing on June 23, 1997, for jury selection, each person summoned was to complete a questionnaire. The following "statutory qualifications"—age, citizenship, residence, literacy, competence, and no felony convictions—were established by answers on the questionnaires. On the day the grand jurors were chosen and sworn, the first 15 names were called. One member of the panel was excused due to a conflicting school schedule and the 16th person was called. The county attorney asked if any member of the panel "could not return an indictment if there were probable cause shown." The county attorney then passed the panel for cause.

After having a presiding juror and deputy presiding juror sworn, excusing the unselected prospective jurors, and having an oath administered to the grand jurors, the district judge spoke for the first time during the proceeding of the nature of the crimes under investigation. At that time he said only that the county attorney had asked that he call a grand jury to investigate "[t]he offenses of making a false writing and criminal defamation." The grand jurors knew nothing more about the subject of their investigation when the district judge adjourned the jury selection proceeding and turned the matter over to them.

In October 1997, as a result of the grand jury investigation, indictments were returned charging Lillian Snodgrass, Torre Conway, and HOPE with making false informations and criminal defamation. The bill of particulars states that HOPE and those associated with it made numerous complaints to regulatory agencies about the Norton County Hospital, its staff, administrator, and Board of Trustees (Board) in order to gain control over the hospital's operations and to punish the staff, administrator, and Board. On December 2, 1997, the district judge who ordered the grand jury summoned and presided when it was selected recused himself.

Defendants sought a change of venue. They documented the local notoriety of the matter involving complaints being made

against the hospital and its operations and argued that prejudice existing in the community precluded a fair and impartial trial. In an order filed March 10, 1998, an assigned district judge granted the motions for change of venue.

Torre Conway filed a motion and an amended motion to dismiss the indictments. In an order filed April 24, 1998, the assigned district judge dismissed the indictments.

The State appealed. The notice of appeal states that the appeal is taken from the order changing venue as well as the order dismissing the indictments.

Appellees contend that whether the State made a record showing that the grand jurors were legally qualified is a question of fact, which should be reviewed for abuse of discretion. The issue, however, is whether the district court erred in dismissing the indictments. Even if the question were as appellees contend, this court reviews a fact determination to see if it is supported by substantial competent evidence, not for abuse of discretion. Moreover, the lack of a record of the jurors' qualifications, as envisioned by the district court, is not controverted.

The question of whether the grand jurors were legally qualified depends on statutory interpretation, which is a question of law, and this court's review is unlimited.

Although it made no findings that any of the grand jurors was unqualified, the district court found that the grand jury "was not properly impaneled in accordance with the law of the state" and dismissed the indictments against Snodgrass, Conway, and HOPE. According to the district court, it is the duty of the county attorney to make a record showing that the grand jurors were legally qualified. The district court's finding that the grand jury was not properly impaneled seems to have been presumed from the absence of a record of "any inquiry of any discretionary legal qualifications and many of the mandatory legal qualifications." In the district court's view, the "mandatory legal qualifications" are set out in K.S.A. 43-156 and K.S.A. 43-158, and the "discretionary legal qualifications" are set out in K.S.A. 43-159.

K.S.A. 43-156 provides: "Every juror, grand and petit, shall be a citizen of the state, resident of the county and possess the qual-

ifications of an elector as now, or in the future established." Citizenship, residence, and age were established by the juror's questionnaire answers and by questions directed by the district judge to the panel at the time of jury selection.

K.S.A. 43-158 provides:

"The following persons shall be excused from jury service: (a) Persons unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out a jury questionnaire form prepared by the commissioner;

(b) persons under adjudication of incompetency;

(c) persons who within ten (10) years immediately preceding have been convicted of or pleaded guilty, or *nolo contendere*, to an indictment or information charging a felony."

Literacy, competence, and the lack of felony convictions were established by answers on the questionnaires.

What the district court termed the "discretionary legal qualifications" are found in K.S.A. 43-159:

"[T]he following persons may be excused from jury service by the court: (a) Persons so physically or mentally infirm as to be unequal to the task of ordinary jury duty;

(b) persons who have served as jurors in the county within one (1) year immediately preceeding [*sic*];

(c) persons whose presence elsewhere is required for the public welfare, health or safety;

(d) persons for whom jury service would cause extraordinary or compelling personal hardship;

(e) persons whose personal relationship to the parties or whose information or interest in the case to be tried is such that there is a probability such persons would find it difficult to be impartial."

Dismissal of the indictments was sought on the ground that a number of the jurors should have been but were not excused pursuant to subsection (e) because they would find it difficult to be impartial. The following list of grand jurors and their interests in the matter was supplied to the district court:

"Jane Stull is married to a member of the Norton County Hospital Board;

"John Rojas is employed by a Norton County Hospital Board member;

"Bruce Poage was quoted in the press as being opposed to the alleged activities of HOPE and feeling sympathetic to the Norton County Hospital Board. Mr. Poage is also a member of the Norton County Hospital position recruitment committee;

"Pam Menagh is married to the local Chief of Police;

"Roberta Bruinekoll is a co-worker of a Norton County Hospital Board Member;

"Willa Vollertsen's son is the Norton County Hospital pharmacist;

"Rita Wray has close friends on the Norton County Hospital Board;

"Jan Martin is employed by a Member of the Norton County Hospital Board of Directors."

Although the defendants presented information on individual jurors, the memorandum decision and order dismissing the indictments reflects that the district court did not consider the status of individual jurors. Instead, the district court found fault with the record's not showing that the jurors were legally qualified: "What's not in the record is presumed to not exist." In the view of the district court, all items identified in K.S.A. 43-156, 43-158, and 43-159 are legal qualifications that must be shown in the record.

With regard to the items identified in 43-156 and 43-158, the district judge rejected the State's position that the completed questionnaires established the jurors' qualifications. Because the jury questionnaires "were not on the record of the proceeding," which seems to refer to the jury selection proceeding, the district judge concluded that they were "not sufficient."

The district court cites *State v. Ji*, 251 Kan. 3, 8, 832 P.2d 1176 (1992), and *State v. Folkerts*, 229 Kan. 608, 612, 629 P.2d 173, *cert. denied* 454 U.S. 1125 (1981), for the proposition that the record must show that jurors possess the 43-158 qualifications. Neither is applicable. In *Folkerts*, the trial judge declared a mistrial upon learning that one of the jurors was a recently convicted felon. The question was whether retrial constituted double jeopardy. 229 Kan. at 609. In *State v. Ji*, 251 Kan. at 8, Ji challenged the constitutionality of the K.S.A. 43-159 permissive exemption from jury service of handicapped persons. The court mentioned that Ji failed to present any evidence that any handicapped person was excused from jury service. 251 Kan. at 8.

Other than *Folkerts* and *Ji*, the only Kansas cases cited by the district judge involve jury challenges that were unsuccessful because there was no "corruption, serious misconduct or palpable disregard of the law." They were cited only to be distinguished from the present case. According to the district judge, "[n]one of

them concern directly the near complete absence of inquiry as to legal qualifications."

The legal authorities cited by the district judge either do not support his decision or support it only in a general and abstract sense. The district judge's failure to recognize or consider the substantial differences between a grand and petit jury flawed his rationale and led to a decision that we cannot affirm.

In Kansas, a grand jury is a creature of statute and not of the constitution. Its function is investigatory and accusatory in contrast to a petit jury, which determines the guilt or innocence of an accused. Unlike a jury trial or preliminary hearing, a district judge does not preside over the grand jury proceedings, nor does a defendant have a right to be present or call or cross-examine witnesses. The county attorney has a limited role in the grand jury proceedings and, contrary to the opinion of the district court, has no responsibility to make a record or ensure that the jurors are qualified. Nor does a grand jury replace a preliminary hearing. K.S.A. 22-2902 simply states that a defendant charged with a felony is entitled to a preliminary hearing unless he or she is indicted by a grand jury. The analogy drawn by the district court between a grand jury, a petit jury, and a preliminary hearing is not valid.

K.S.A. 22-3001(3) provides that grand jurors "shall be drawn and summoned in the same manner as petit jurors." There is no question that the jurors in the present case were drawn and summoned as required by 22-3001(3). The defendants question only the selection process in that there was no voir dire examination of the jury. The simple response to the defendants' complaint is that there is no statutory requirement to conduct a traditional voir dire of the grand jurors. K.S.A. 60-247 provides for the selection, including voir dire, of jurors in a civil trial, and K.S.A. 22-3408 for a criminal trial. A grand jury is not a civil or criminal trial. Based upon the grand jury's function, composition, and proceedings, a trial-like voir dire is not required. Nor is it feasible, since there is no defendant to participate in a trial-like voir dire. In *State v. Millhaubt*, 144 Kan. 574, 577, 61 P.2d 1356 (1936), in speaking to a statutory provision providing for further drawings from the jury wheel if a party demands it, this court said: "It likewise seems evident that

such a provision can be of no effect where a grand jury is being impaneled for the reason there is no party appearing. The provisions of R.S. 62-907 for objections to competency do not apply here."

As already noted, the jury questionnaires are in the record on appeal. There is no apparent reason why the questionnaires would not have been available to the district court. The district court's view seems to be that they cannot replace voir dire. It is a very common practice in Kansas courts to rely on questionnaires for establishing the 43-156 and 43-158 qualifications of prospective jurors. When questionnaires are used for this purpose, courtroom time does not need to be taken up establishing basic requirements. In addition to being eminently sensible, this practice appears to have been sanctioned by the legislature. K.S.A. 22-3001(3) provides, in part: "The grand jury shall consist of 15 members and shall be drawn and summoned in the same manner as petit jurors for the district court. . . . The judge or judges ordering the grand jury shall direct that a sufficient number of *legally qualified persons be summoned for service as grand jurors.*" (Emphasis added.) This language indicates that the legislature contemplated that the legal qualifications of potential jurors will have been established before they appear for the selection proceeding. This is further evidenced by K.S.A. 43-161, which makes the failure or refusal to answer the questionnaire contempt of court, and provides that one "who willfully or corruptly [makes] false answers to such questions" is guilty of a class A nonperson misdemeanor. The district judge should utilize the jury questionnaires to determine if the jurors meet the qualifications set out in 43-158 and 43-156. Then, if necessary, the court can direct additional questions to the jurors "before the jury is sworn." K.S.A. 43-167.

The language of 22-3001(3) serves to cast doubt on another of the district court's premises—that the items identified in K.S.A. 43-159 are "legal qualifications" like the items identified in 43-156 and 43-158.

The statutory scheme posited by the district judge in the present case includes, in addition to the mandatory designation for 43-156 and 43-158 and discretionary designation for 43-159, the labels

"objective" and "subjective." The lack of acuity in the district judge's depiction is obvious in 43-159(b), which provides that persons who have served as jurors in the county within a year may be excused from service. When and where persons serve as jurors is not a subjective matter. The more significant incongruity in the judge's scheme, however, is in his designating the 43-159 items as discretionary but concluding that each must be established on the record.

K.S.A. 22-3002(1) provides in part that the prosecutor "may challenge the array of jurors on the ground that the grand jury was not selected, drawn or summoned in accordance with law, and may challenge an individual juror on the ground that the juror is not legally qualified." The prosecutor is not required by the language of this statute to question prospective jurors for the purpose of establishing that they are legally qualified. The district judge, however, relied on other authorities for the rule that the prosecutor has a duty to inquire of the prospective grand jurors. He cited KRPC 3.3(d) (1998 Kan. Ct. R. Annot. 354) and the comment to KRPC 3.8 (1998 Kan. Ct. R. Annot. 365). KRPC 3.3(d) provides: "In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." The comment states, in pertinent part: "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." With regard to this comment, the district judge added: "In a grand jury situation the word 'indictment' would be substituted for the word 'guilt.'" Such a conclusion again ignores the inherent difference between a jury trial and a grand jury proceeding. There is no quibbling with the principles underlying the rule and the comment, but they do not create a duty on the prosecuting attorney to conduct a trial-like voir dire of prospective grand jurors. The district judge's construction of K.S.A. 22-3002(1) involves more than reading "may" as "shall." It also involves reading "legally qualified" as including the subsections of 43-159. Such a reading, as previously noted,

ignores the function of a grand jury and the nature of its statutory duty to investigate and, if warranted, issue an indictment.

The district judge's reasoning, in part, focuses on an analogy between the function of a grand jury and a preliminary hearing. Because a biased judge would not be permitted to preside over a preliminary examination, the district judge concluded that it was illogical to permit a biased grand juror to participate in an investigation. However, as we have noted, the district judge made no finding that any of the grand jurors was disqualified or that they violated their oath in performing their duties.

We have noted in this opinion that a grand jury does not replace a preliminary hearing. The purpose and function of each are quite different. A defendant appears, with counsel, at a preliminary hearing after being charged with a felony. The State has the burden of presenting sufficient evidence for the presiding judge to find that a felony has been committed and there is probable cause to believe that the felony was committed by the defendant. If the judge so finds, the defendant is bound over for trial. *State v. Powell*, 266 Kan. 282, Syl. ¶ 1, 971 P.2d 340 (1998). In contrast, at the time the grand jury is impaneled, there is no defendant or a burden of proof placed on the county attorney. Historically, the grand jury functioned primarily as a protection against arbitrary prosecution by the State:

"It frequently stood as a barrier against royal persecution, until at length it was regarded as an institution that secured the King's subjects against the oppression of unfounded prosecutions by the Crown. Although that reason may not have been the motivating factor in this country, the fact remains that the grand jury system was adopted here and for considerations quite similar to those of the mother country. Our adoption of the system was founded on the theory not only of bringing wrongdoers to justice, but also of providing protection against unfounded and unreal accusations, whether these had their origin in governmental sources or were founded on private passion or enmity." 38 Am. Jur. 2d Grand Jury § 2, pp. 947-48.

As noted earlier, the grand jury's primary function is to investigate and, where warranted, to present an indictment upon concurrence of 12 or more jurors. K.S.A. 22-3002(2). K.S.A. 22-3005(2) provides

that after the grand jury has been impaneled, "it shall retire to a private room, and inquire into the crimes cognizable by it."

For its position that personal bias does not disqualify a grand juror, the State cites federal cases, Am. Jur. 2d, and a number of cases from other states, many of them cited in the encyclopedia's discussion of qualifications of grand jurors. A cursory examination of the opinions from other states shows that the qualifications generally are statutorily established and that where there is no provision for challenges based on the bias of individual jurors, personal bias does not disqualify a grand juror. In *State v. Oxendine*, 303 N.C. 235, 278 S.E.2d 200 (1981), a grand juror's being the brother of the victim whose murder was being considered and a prosecution witness at trial was not a basis for quashing the indictments. Similarly, in *Southward v. State*, 293 So. 2d 343 (Miss. 1974), grand jurors related to the victim of the crime being investigated were not disqualified on that basis alone. The Mississippi Supreme Court also noted:

"There was no evidence whatever that any such relative grand juror or other member of said body acted with 'malice, hatred, or ill will' or fraud, or otherwise violated the oath taken by grand jurors as set out by Mississippi Code Annotated section 13-5-45 (1972). Absent such evidence, it is presumed that the grand jurors did not improperly or illegally act in returning the indictment against the appellant." 293 So. 2d at 344.

Also, in *United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645, 649 (9th Cir. 1980), the Ninth Circuit Court of Appeals stated: "The Fifth Amendment bestows upon grand jurors a heavy responsibility, but lacking evidence to the contrary, courts must presume that grand jurors have properly performed their duties." 38 Am. Jur. 2d Grand Jury § 22, p. 968, states: "A person objecting to the selection of the grand jury array has the burden of overcoming the presumption that it was selected in a proper manner."

The appellees also direct the court's attention to federal cases. In *Costello v. United States*, 350 U.S. 359, 363, 100 L. Ed. 397, 76 S. Ct. 406 (1956), the United States Supreme Court stated that an indictment, valid on its face, is enough to call for trial of the charge on the merits if it was "returned by a legally constituted and unbiased grand jury." In this formulation, it appears that "legally con-

stituted" does not include being unbiased. For the proposition that due process is denied by an appearance of bias even where there is no showing of actual bias, appellees cite *Peters v. Kiff*, 407 U.S. 493, 33 L. Ed. 2d 83, 92 S. Ct. 2163 (1972). *Peters* really has no application here. It involved systematic exclusion from grand juries on the basis of race. Appellees cite *United States v. Adamo*, 742 F.2d 927 (6th Cir. 1984). There, the question before that court was the effect of the prosecuting attorney's failure to disclose exculpatory evidence to the grand jury. The claim was that "a grand jury which at its inception was legally constituted and unbiased" became biased as a result of prosecutorial misconduct. 742 F.2d at 936. Thus, the court's discussion of bias centered on the notion of "predisposition." 742 F.2d at 936.

It is further stated in 38 Am. Jur. 2d Grand Jury § 4, pp. 948-49, that the fundamental purpose of a grand jury "is to obtain a group of men and women who represent a fair and impartial cross section of the citizens of the county, each with his or her own individual thoughts, experiences, and reactions." It also states that a grand jury

"has the right and obligation to act on its own information, however acquired; that the oath required to be taken by grand jurors contemplates that they may be called on to act in the cases of both enemies and friends and requires them to inquire diligently into the commission of crimes; and that those who live in the vicinity of the place where the crime was committed know better than others the character of the parties and of the witnesses and are, therefore, particularly proper members of the grand jury." 38 Am. Jur. 2d Grand Jury § 7, pp. 951-52.

The oath administered to the grand jurors is set out in K.S.A. 22-3003 and states, in part:

" 'You shall present no person through malice, hatred or ill will, nor leave any unpresented through fear, favor or affection, or for any reward or the promise of hope thereof, but in all your presentments you shall present the truth, the whole truth, and nothing but the truth, according to the best of your skill and understanding.' "

The record contains no showing that any juror acted through malice, hatred, or ill will or failed to act through fear, favor, or affection. As previously noted, in the absence of such a showing, the grand jury is presumed to have properly performed its duties.

The qualifications of a grand juror are set out in 43-156 and 43-158. Contrary to the conclusions of the district court, the record does show that the grand jurors met those qualifications. That showing consisted of the jury questionnaires and the follow-up questions by the district judge at the time the jurors were selected. Even if the questionnaires had not been part of the record, absent evidence to the contrary, the court must presume the jurors were properly impaneled. The appellees had the burden to present such contrary evidence and failed to do so. The district court not only failed to presume the jurors were properly impaneled, but incorrectly placed the burden on the State to show the jurors were qualified. Since in the opinion of the district court the State failed to meet that burden, the court erroneously held that the grand jury was improperly impaneled.

The State also appeals the district court's order changing venue. An appellate court has the duty to question jurisdiction on its own initiative. If the record shows a lack of jurisdiction for the appeal, the appeal must be dismissed. *McDonald v. Hannigan*, 262 Kan. 156, 160, 936 P.2d 262 (1997). The State's right to appeal in a criminal case is strictly statutory, and the appellate court has jurisdiction to entertain a State's appeal only if it is taken within time limitations and in the manner prescribed by the applicable statutes. *State v. Unruh*, 263 Kan. 185, 189, 946 P.2d 1369 (1997). K.S.A. 22-3602(b) provides:

> "Appeals to the supreme court may be taken by the prosecution from cases before a district judge as a matter of right in the following cases, and no others:
> (1) From an order dismissing a complaint, information or indictment;
> (2) from an order arresting judgment;
> (3) upon a question reserved by the prosecution; or
> (4) upon an order granting a new trial in any case involving a class A or B felony or for crimes committed on or after July 1, 1993, in any case involving an off-grid crime."

The State does not cite a statutory basis for the court's jurisdiction of its appeal from the district court's order changing venue. Nor does the State assert that this is a question reserved. No statutory basis for jurisdiction is apparent, and we therefore do not consider the issue raised by the State as to venue.

The judgment of the district court dismissing the indictments is reversed, and the case is remanded with directions to reinstate the indictments against the defendants.