(104 P.3d 424)
No. 92,638

STATE OF KANSAS, *Appellee*, v. RONALD G. SINGLETON, *Appellant*.

Opinion filed January 21, 2005.

*Patrick H. Dunn*, assistant appellate defender, for appellant.

*Chris Oakley*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

RULON, C.J.: Movant Ronald G. Singleton appeals the district court's denial of his motion to correct an illegal sentence under K.S.A. 22-3504(1), arguing his sentence should be modified from a severity level 1 offense to a severity level 3 offense following *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004). In the alternative, the movant argues the court erred in denying his motion to file a direct appeal 18 months out of time.

This record shows that in August 2002 the movant and the State presented the district court with a plea agreement where the movant agreed to enter a plea of guilty to one count of manufacture of methamphetamine, a severity level 1 drug felony. In exchange the State agreed to dismiss one count of conspiracy to manufacture methamphetamine, a severity level 1 drug felony; one count of possession of anhydrous ammonia, a severity level 4 drug felony; and felony possession of drug paraphernalia, a severity level 4 drug felony. Further, the State agreed to recommend a downward durational departure from the presumed 138-154 month range to 72 months of imprisonment. The movant agreed not to request either

a dispositional departure or a durational departure to a sentence of less than 72 months. The court accepted the plea on the record and imposed the recommended sentence on August 21, 2002.

Later, on February 17, 2004, the movant filed a pro se motion to correct an illegal sentence arguing he should have been sentenced as a severity level 3 offender under our Supreme Court's decision in *State v. McAdam*. On March 2, 2004, the movant's appointed counsel filed another motion to correct an illegal sentence which included a motion to file a notice of appeal out of time. The district court denied both motions, finding *McAdam* did not apply retroactively and the movant was not entitled to file an appeal as his conviction was the result of an agreed plea bargain sentence wherein the movant received a downward durational departure sentence. This appeal followed.

## Motion To Correct An Illegal Sentence

In *State v. Barnes*, 278 Kan. 121, 123-24, 92 P.3d 578 (2004), our Supreme Court instructed that imposition of a sentence in conformity with a severity level 1 offense for conspiracy to manufacture methamphetamine was not an illegal sentence, nor was such an unconstitutional sentence. The *Barnes* court concluded the sentencing court did not err in denying the motion to correct an illegal sentence as the movant's sentence was not illegal.

We understand the movant's second motion to correct an illegal sentence is now claimed to constitute a K.S.A. 60-1507 motion despite the fact that no such language was present in the original motion. However, historically we have been instructed that "Pro se pleadings are to be liberally construed." *State v. Andrews*, 228 Kan. 368, 370, 614 P.2d 447 (1980) (pro se documents considered motion for new trial); see *State v. Jackson*, 255 Kan. 455, 458, 874 P.2d 1138 (1994) (A motion to withdraw a plea of nolo contendere after sentencing should be treated like a K.S.A. 60-1507 motion.); *Jackson v. State*, 1 Kan. App. 2d 744, 573 P.2d 637 (1977) (K.S.A. 60-1507 motion construed as motion for new trial under K.S.A. 22-3501). Additionally, our Supreme Court has recognized that "[t]here is no indication that a motion to correct an illegal sentence was intended by the legislature to be treated differently from a

K.S.A. 60-1507 attack upon a sentence. Logic does not require a different treatment." *State v. Duke*, 263 Kan. 193, 196, 946 P.2d 1375 (1997). But see *State v. McCoin*, 278 Kan. 465, 101 P.3d 1204 (2004) (District court's denial of pro se motion seeking order to correct journal entry was really a motion to arrest judgment and could not be "liberally construed" to be a motion to correct an illegal sentence and, thus, defendant was required to file K.S.A. 60-1507 motion before the court had jurisdiction to consider the matter.).

We are unclear if our Supreme Court in *McCoin* is abandoning the court's long-standing policy of liberal construction where pro se motions are concerned. However, we note that McCoin's motion was construed by the district court and our Supreme Court as a motion to arrest judgment under K.S.A. 22-3502. 278 Kan. at 467-68. Here, we have a motion to correct an illegal sentence and, under *Duke*, we are obligated, until otherwise instructed, to treat the present motion as a K.S.A. 60-1507 motion and address the merits of the motion rather than dismiss for lack of jurisdiction.

## Application of *McAdam*

In *McAdam*, our Supreme Court held that conspiracy to manufacture methamphetamine under K.S.A. 65-4159(a) had identical elements to K.S.A. 65-4161(a), a severity level 3 offense, and concluded the defendant there could only be sentenced to the lesser penalty. 277 Kan. at 146-47. *McAdam* was a direct appeal from a conviction at jury trial. Here, this movant entered a guilty plea, did not file a direct appeal from the sentence imposed, and his sentence became final 10 days after sentencing under K.S.A. 22-3608(c).

In *Wilson v. State*, 31 Kan. App. 2d 728, 71 P.3d 1180, *rev. denied* 276 Kan. 974 (2003), this court considered an analogous issue relating to the retroactive application of *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002). In *Frazier*, this court concluded that possession of ephedrine or pseudoephedrine under K.S.A. 2001 Supp. 65-7006(a) and possession of drug paraphernalia, as proscribed by K.S.A. 2001 Supp. 65-4152(a)(3), are identical offenses despite their variations in termi-

nology. This court held that the severity level 1 sentence imposed was illegal and vacated Frazier's sentence and remanded the case with directions to impose a sentence consistent with the penalties for a drug severity level 4 felony. 30 Kan. App. 2d at 405-06.

Based upon this ruling, Wilson filed a K.S.A. 60-1507 motion arguing his severity level 1 drug felony sentence was illegal. This court held that the rule announced in *Frazier* should not be applied retroactively.

The law is well settled that state courts are under no constitutional duty to apply their criminal decisions retroactively. See *Wilson*, 31 Kan. App. 2d at 733. Here, this movant's sentence was final before *McAdam* was decided on January 30, 2004. Likewise, there is no claim that a new constitutional rule of criminal procedure is at issue, nor can this movant argue that he could not be convicted of the crime as set out in the plea agreement. See *State v. Barnes*, 278 Kan. at 123. Further, we understand that a defendant has no right to a lesser sentence when two crimes have the same elements under the United States Constitution. *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979) ("[T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause.").

We are convinced the Kansas Constitution provides no right to a lesser sentence because a defendant's rights under our Constitution have generally been held to be no greater than the rights provided by the United States Constitution. See *State v. Morris*, 255 Kan. 964, 880 P.2d 1244 (1994) (Provisions of section 10 of the Kansas Constitution Bill of Rights grant no greater protection against self-incrimination than does the Fifth Amendment to the United States Constitution.); *State v. Schultz*, 252 Kan. 819, 824,

850 P.2d 818 (1993) (The scope of § 15 of the Bill of Rights to the Kansas Constitution and of the Fourth Amendment to the United States Constitution is usually identical.); *In re Habeas Corpus Petition of Lucas*, 246 Kan. 486, 489, 789 P.2d 1157 (1990) (Section 10 of the Bill of Rights of the Kansas Constitution entitles a defendant to the same protection against double jeopardy afforded under the United States Constitution.); *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 583, 701 P.2d 1314 (1985) (Section 1 of the Kansas Constitution Bill of Rights is given much the same effect as the Equal Protection Clause of the Fourteenth Amendment).

This movant's only right to relief from the imposed sentence would arise from our Supreme Court's decisions in *State v. Clements*, 241 Kan. 77, 734 P.2d 1096 (1987), *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989), and most recently, *State v. McAdam* and *State v. Barnes*. However, *Clements, Nunn, McAdam,* and *Barnes* were all direct appeals and not collateral attacks as is the case before us. Recently, our Supreme Court noted the differences between a *McAdam* claim presented on direct appeal and such a claim presented in a collateral attack, as in *Wilson*. See *Barnes*, 278 Kan. at 126-27. Because the appeal in *Barnes* was direct, according to our Supreme Court, much of the analysis in *Wilson* was inapplicable. The reverse would likewise be true.

As in *Wilson*, we hold that *McAdam* does not apply retroactively to those cases on collateral review because to do so would give the movant the double benefit of a favorable plea agreement, with a significant downward durational departure, and then the benefit of a reduced sentence based on an issue the movant failed to raise at the trial court or on direct appeal.

## Untimely Appeal

Finally, the movant argues he should be allowed to file an appeal out of time, invoking *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). The right to appeal is strictly statutory. Neither the United States Constitution nor the Kansas Constitution guarantees the right to appeal. Therefore, appellate courts may only exercise jurisdiction over an appeal if it is taken within the time limitations

and in the manner prescribed by statute. See *State v. Snodgrass*, 267 Kan. 185, 196, 979 P.2d 664 (1999). The movant was sentenced on August 21, 2002, and, under K.S.A. 22-3608, he had 10 days to file an appeal.

At the hearing on this movant's motion to file an untimely appeal, his trial counsel testified it was his normal practice to inform his clients of their right to appeal. Trial counsel here testified it is more likely than not that he advised the movant of his right to appeal. However, the movant now claims he was not advised of his right to appeal from his guilty plea. The district court did not make a finding the movant was advised of his right to appeal, finding instead the movant was barred from appealing his downward departure sentence. We note the transcript from movant's sentencing does not indicate the movant was informed of his right to appeal by the district court as required by K.S.A. 22-3424(f).

A limited exception to the jurisdictional bar to late appeals was recognized in *State v. Ortiz.* In *Ortiz*, our Supreme Court held that in the interests of fundamental fairness a defendant should be allowed to file an appeal out of time if: (1) the defendant was not informed of his or her right to appeal; (2) was not furnished an attorney to perfect the appeal; or (3) was furnished an attorney who failed to perfect the appeal. 230 Kan. 733, Syl. ¶ 3.

In establishing the exceptions to the rule that a court only has jurisdiction over appeals that are made in a timely manner, the *Ortiz* court cited *Brizendine v. State*, 210 Kan. 241, 242-44, 499 P.2d 525 (1972).

In *Brizendine,* the defendant was convicted at jury trial of burglary. He subsequently told his attorney he wished to appeal the conviction, but due to some misunderstanding between client and counsel, no appeal was ever filed. Citing several federal cases, the Brizendine court held that the defendant had the option of taking an appeal out of time due to his counsel's error. See *Anders v. California,* 386 U.S. 738, 742-43, 19 L. Ed. 2d 493, 87 S. Ct. 1396 (1967) (procedure permitting appellate counsel to withdraw upon filing a conclusory letter stated that the appeal had "no merit" and permitting the appellate court to affirm the conviction upon reaching the same conclusion following a review of the record did not

comport with fair procedure and lacked the equality that the Fourteenth Amendment requires); *Atilus v. United States,* 406 F.2d 694 (5th Cir. 1969) (defendant was denied effective assistance of counsel when counsel failed to perfect an appeal when requested to do so by the defendant); *Benoit v. Wingo,* 423 F.2d 880 (6th Cir. 1970) (Appellant did not have adequate and effective assistance of counsel in prosecuting his appeal when counsel abandoned the appeal by letter which was written with such finality that it gave the appellant no opportunity to request counsel to continue with the appeal. Further, counsel did not leave the appeal in such status that the appellant, being confined in prison and being unlearned in law, could be expected to pick it up pro se and prosecute it to conclusion, nor did he have an opportunity to have the trial judge appoint new counsel to assist him in the prosecution of his appeal.); *Kent v. United States,* 423 F.2d 1050 (5th Cir. 1970) (Petitioner, who claimed he had been denied effective aid of counsel because court-appointed counsel had been requested to appeal but did not do so, was not required to show reversible trial error.). All the federal cases cited were premised on a claim of ineffective assistance of counsel.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

"(a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

"(b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Chamberlain v. State,* 236 Kan.

650, Syl. ¶ 3, 694 P.2d 468 (1985) (adopting the holdings from *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 [1984]).

The *Strickland/Chamberlain* test has been found to apply to challenges to guilty pleas based on ineffective assistance of counsel. In the context of a motion to withdraw a guilty plea, our Supreme Court noted that the first half of the *Strickland* test is a restatement of the standard of attorney competence. The second, or "prejudice" requirement, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *State v. Muriithi,* 273 Kan. 952, 956, 46 P.3d 1145 (2002) (citing *Hill v. Lockhart,* 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 [1985]) (Both prongs of the *Strickland* test must be satisfied before a petitioner is entitled to relief on a claim that his or her guilty plea was involuntary due to ineffectiveness of counsel.).

In *Roe v. Flores-Ortega,* 528 U.S. 470, 478, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000), the respondent filed a habeas petition attacking his conviction and sentence from a guilty plea arguing that his counsel was ineffective for failing to file an appeal after promising to do so. The United States Supreme Court rejected the view that failure to file a notice of appeal was per se ineffective and held that the proper analysis was the circumstance-specific reasonableness inquiry established in *Strickland v. Washington.* In *Roe,* the Court held:

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. [Citation omitted.] Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether

the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." 528 U.S. at 480.

In order to be entitled to withdraw a guilty plea under *State v. Muriithi,* the movant must show that counsel's performance fell below the standard of reasonableness and, but for counsel's errors, the movant would not have entered into the plea agreement. Similarly, under *Roe v. Florez-Ortega,* the movant must demonstrate an objective and reasonable basis for appeal existed at the time or a definite communication to counsel that the movant wanted to appeal. When analyzing these two factors, the court must consider all the circumstances of the case and all the information defense counsel knew or should have known.

This court's decision in *Baker v. State,* 20 Kan. App. 2d 807, 894 P.2d 221, *rev. denied* 257 Kan. 1091 (1995), cuts against this movant's claim based on *Ortiz.*

In *Baker,* the petitioner filed a K.S.A. 60-1507 motion claiming his convictions for indecent liberties with a child were illegal and that the Kansas Department of Corrections had misclassified the offenses. Baker argued that under *State v. Williams,* 250 Kan. 730, 829 P.2d 892 (1992), he could only be charged and convicted of the crime of aggravated incest, a crime which carried a lesser sentence. Baker had entered a plea of guilty to both charges and, under *LaBona v. State,* 255 Kan. 66, 69, 872 P.2d 271 (1994), our Supreme Court held that Baker waived the right to challenge the State's decision to charge him with the more general crime of indecent liberties with a child. 20 Kan. App. 2d at 810-11.

On appeal from the denial of his 60-1507 motion, Baker argued that he was denied effective assistance of counsel because his lawyer failed to recognize or inform him that he should have been charged with the more specific and less severe crime of aggravated incest. This court concluded that at the time Baker entered into the plea agreement it was possible to charge a defendant with either indecent liberties or aggravated incest, even when the defendant was within the degree of relationship set out in K.S.A. 21-

3603 pursuant to *State v. Hutchcraft,* 242 Kan. 55, 744 P.2d 849 (1987). While *Hutchcraft* was overruled in part by *State v. Williams,* 250 Kan. 730, 829 P.2d 892 (1992), *Willliams* was not decided until 1992, almost 4 years after Baker was sentenced. 20 Kan. App. 2d at 810.

*Baker* instructs the standard of reasonableness of counsel actions is judged under the law applicable at the time of counsel's representation. This court held that, realistically, Baker's counsel could not have known that in 1988, Baker could only be charged with aggravated incest for molesting his step-daughter. The failure of the State and defense counsel to advise Baker of a legal standard that had not yet been applied to those facts, and would not be so applied until sometime in the future, did not render the plea involuntary. Further, under the circumstances, there was no basis to conclude that Baker's defense counsel's performance fell below the objective reasonableness standard set out in *Chamberlain v. State,* 236 Kan. 650, 656-57, 694 P.2d 468 (1985), by failing to foresee an interpretation of law that would not occur until sometime in the future. 20 Kan. App. 2d at 811.

Under the analysis in *Roe v. Flores-Ortega,* this movant has not provided any evidence that he told or otherwise indicated he wished to appeal his plea-bargained sentence. Nor has this movant demonstrated that a rational defendant, when considering the state of the law at the time, would wish to appeal the classification of his crime of conviction especially when considering the benefit he received as a result of the plea agreement. Therefore, it does not appear that the movant is entitled to file an appeal out of time based on his claim that his trial counsel failed to notify him of his right to appeal.

This, however, does not end the analysis because, as we noted, the trial court also has a duty to inform a defendant of his or her right to appeal under K.S.A. 22-3424(f).

In *Peguero v. United States,* 526 U.S. 23, 143 L. Ed. 2d 18, 119 S. Ct. 961 (1999), the Court examined a petitioner's claim that his rights were violated because the trial court did not inform him of his right to appeal under Federal Rule of Criminal Procedure 32(a)(2). The Court held that the failure of a trial court to inform

a defendant of his or her right to appeal pursuant to Fed. R. Crim. Proc. 32(a)(2) did not automatically entitle the defendant to collateral relief and was subject to harmless error analysis. Such relief was only available when the defendant is prejudiced by the court's error. 526 U.S. at 27. The Court concluded the defendant was not prejudiced because he had independent knowledge of his right to appeal and thus the error was harmless. 526 U.S. at 29-30.

Applying *Peguero,* this movant has not alleged prejudice in the district court's failure to inform him of his right to appeal. There is nothing in the record of this movant's original sentence that indicates he wished to appeal. The only evidence presented at the K.S.A. 60-1507 hearing was the movant's proffer that he was not notified of his right to appeal.

Despite the above discussion, we are obligated to remand this case to the district court for an *Ortiz* hearing to determine if this movant was advised of his right to appeal from his guilty plea and whether he ever requested that an appeal be filed. This result is mandated by our reading of our Supreme Court's decision in *State v. Willingham,* 266 Kan. 98, 967 P.2d 1079 (1998).

In *State v. Willingham,* our Supreme Court reviewed a claim by the defendant that Willingham should be allowed to file an appeal out of time because the trial court had failed to notify him of his right to appeal under K.S.A. 22-3424(f). The *Willingham* court held where there was no evidence defendant was advised of his right to appeal at sentencing, either by the sentencing judge or trial counsel, and counsel had failed to obtain a written waiver of appeal under K.A.R. 105-3-9, *Ortiz* applied and defendant was allowed to file a direct appeal out of time. 266 Kan. at 100-02.

We are duty bound to follow Kansas Supreme Court precedent, unless there is some indication the court is departing from its previous position. *State v. Jackson,* 30 Kan. App. 2d 288, 299, 41 P.3d 871 (2002).

*Ortiz* and the decisions cited therein are in part premised on the concept of "fundamental fairness." Because a fundamental fairness analysis is not subject to clearly definable legal elements, we must approach such analysis with considerable self-restraint. "Courts should tread gingerly when faced with arguments concerning the

'fundamental fairness' component of the Fifth Amendment's Due Process Clause," which should be reserved for *"the most serious cases, which truly shock the conscience as well as the mind."* (Emphasis added.) *United States v. Penn,* 647 F.2d 876, 880 (9th Cir.), *reh. denied* (reversing district court's ruling that Due Process Clause required the suppression of certain evidence), *cert. denied* 449 U.S. 903 (1980); accord *United States v. Rivera,* 900 F.2d 1462, 1477 (10th Cir. 1990). "Not every trial error or infirmity which might call for application of an appellate court's supervisory powers correspondingly constitutes a failure to observe that fundamental fairness that is essential to the very concept of justice. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 40 L. Ed. 2d 431, 94 S. Ct. 1868 (1974)"; *State v. Cady,* 248 Kan. 743, 758, 811 P.2d 1130 (1991).

We are convinced that a criminal appellant should not be permitted to accomplish indirectly what he or she cannot accomplish directly. See *Wilson v. American Fidelity Ins. Co.,* 229 Kan. 416, Syl. ¶ 3, 625 P.2d 1117 (1981). Otherwise any criminal defendant who feels prejudiced by any appellate court decision which is not given full retroactive effect could circumvent the court's decision by simply filing a motion to file an appeal out of time.

We conclude that *McAdam* will not be applied to cases which were final prior to the date of the *McAdam* decision.

However, as is mandated by *Willingham,* the district court's ruling that movant had no right to file an appeal out of time is reversed, and the case is remanded for further proceedings consistent with *Ortiz.* At that hearing the district court shall determine if the movant was notified of his right to appeal or was otherwise aware of his right to perfect a timely appeal of his sentence.