NOT DESIGNATED FOR PUBLICATION

No. 111,783

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRAIG MORRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH MAUGHAN, judge. Opinion filed January 22, 2016.
Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam*: Craig Morris appeals the district court's order revoking his probation
and subsequent order that he serve his underlying prison sentence. He argues that the
district court abused its discretion by imposing his underlying sentence. Morris also
argues for the first time on appeal that his original sentence is illegal because his assault
and battery convictions prior to 1993 were misclassified and resulted in the wrong
criminal history score.

1

The following is a summary of the facts of Morris' underlying conviction as stated in the preliminary hearing in this case. On July 28, 2012, Morris and his girlfriend, R.H., were fighting. According to R.H., she left the apartment because Morris hit her in the back. As soon as R.H. returned, Morris grabbed her by the hair and threw her down. Morris started hitting, kicking, and choking R.H. R.H. said Morris accused her of sleeping with somebody and told her to "go get in bed." R.H. complied with Morris' order. Next, R.H. complied with Morris' request for oral sex, and the two had intercourse in the bedroom. R.H. said she agreed to oral sex and intercourse in order to get the beating to stop. But R.H. testified that Morris continued hitting her after they had intercourse. Thereafter, Morris told R.H. to give him oral sex again, and she did. Afterward, Morris and R.H. had intercourse again. When Morris left for work R.H. called 911 to report what had happened.

The State charged Morris with two counts of rape, two counts of aggravated criminal sodomy, two counts of aggravated battery, and one count of criminal threat. On October 22, 2012, Morris pled guilty to two counts of aggravated battery and one count of criminal threat as a part of a plea agreement. In exchange for his pleas, the other counts were dismissed. During the sentencing hearing, the district court made a finding that Morris had a criminal history score of D. Morris did not object to his criminal history score. The district court sentenced Morris to a total underlying prison sentence of 46 months and placed him on probation for 24 months.

A probation violation warrant was filed on November 6, 2013. The warrant alleged that on October 31, 2013, Morris committed the offense of domestic violence battery. The terms of his probation required him to obey the laws of the United States, Kansas, and any other jurisdiction to which he may have been subject. The district court held a probation violation hearing on January 10, 2014. J.S., the alleged victim, testified

at the probation revocation hearing. J.S. said that at the time of the incident she and Morris lived together and had been in a relationship for more than 2 1/2 months. On the morning of October 31, 2013, Morris came home around 8:30. Around the same time, J.S. received a text message from her ex-boyfriend. Morris asked who was texting her. J.S. lied and told Morris that it was her sister. J.S. testified that Morris tried to take the phone, which resulted in the pair wrestling to gain possession of it. According to J.S., Morris grabbed her by the hair and dragged her into the bedroom. She said Morris threw her on the bed and began going through her phone. J.S. testified that she kept trying to take the phone away until Morris pinned her down on the bed with his knees. J.S. also testified that when she tried to take her phone back, Morris hit her in the mouth causing her lip to swell up.

Morris also testified at the probation revocation hearing. Morris denied the allegation that he committed domestic violence battery. He stated that he obtained a Protection From Abuse (PFA) order against J.S. on October 30, 2013, based on an incident the week before when J.S. slapped him and J.S.'s son threatened to "get his buddies to beat [Morris] up." Morris said he slept across the street at his friend's residence on the night of the incident to avoid a conflict with J.S.

With regard to the events of October 31, 2013, Morris admitted getting J.S.'s phone from her but testified that he never dragged J.S. by the hair and never put his hands on J.S. to get her phone. According to Morris, the phone was in J.S.'s hand while she was lying on the couch, and Morris grabbed it to call his brother. Morris explained that the couple shared J.S.'s phone when he ran out of minutes on his government phone. After he grabbed the phone, he saw J.S. had been calling her ex-boyfriend. While he was looking at J.S.'s phone, Morris said J.S. attempted to get the phone back by reaching around and under Morris, but he kept the phone away from her. When asked about J.S.'s swollen lip, Morris responded that she must have hit herself in the lip when trying to retrieve her phone.

Based on these facts, the district court found Morris violated his probation by committing the offense of domestic violence battery. After the court made its finding that Morris had violated the terms and conditions of his probation, Morris suggested several options the district court could consider in place of imposing the underlying sentence. Morris asked the court to consider either reinstating probation, placing him in residential or field services, modifying the underlying sentence, or applying House Bill 2170. Notwithstanding the options presented by Morris, the district court ultimately decided to impose Morris' original prison sentence of 46 months.

ANALYSIS

1. *Revocation*

Once the district court finds there has been a violation of the conditions of probation, "the decision to revoke probation rests in the sound discretion of the district court." *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). A decision is arbitrary, fanciful, or unreasonable if, in light of the evidence, no reasonable person would have taken the view adopted by the district court. 292 Kan. at 550. The burden of demonstrating an abuse of discretion is on the party alleging the abuse. *State v. Burnett*, 300 Kan. 419, 449, 329 P.3d 1169 (2014).

Here, Morris does not appeal the district court's finding that he violated his probation by committing domestic violence battery. Instead, Morris argues the court abused its discretion by revoking his probation and imposing his underlying sentence. In support of his argument that the court improperly imposed his prison sentence, Morris notes that this was his first probation violation and that he took steps to avoid domestic

4

altercations by obtaining a PFA order before the incident. Morris also argues that he could still be successful on probation or could benefit from community treatment programs.

Other than asking this court to reweigh the evidence at the disposition hearing, Morris does not direct us to any errors of fact or law underlying the district court's decision not to reinstate his probation. In light of Morris' own testimony at the revocation hearing establishing he violated the conditions of his probation and the absence of any good reason in the record for concluding the district court's decision was arbitrary, fanciful, or unreasonable, we conclude the district court was well within its discretion to revoke Morris' probation and order him to serve his underlying sentence.

2. *Criminal history*

Morris argues that he received an illegal sentence because his pre-Kansas Sentencing Guidelines Act (KSGA) assault and battery convictions were classified as person misdemeanors in the presentence investigation report when they should have been classified as nonperson offenses. "Whether a prior conviction should be classified as a person or nonperson offense involves the interpretation of the KSGA. Interpretation of a statute is a question of law over which appellate courts have unlimited review." *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015), *cert. denied* __ U.S. __ (January 11, 2016). In this case, Morris' convictions include several convictions that are pre-KSGA.

The State responds to Morris' argument by noting that he did not raise an objection to his criminal history score at sentencing; thus, even if there was error, Morris invited it by not lodging an objection at the time of his sentencing.

Generally, issues not raised to the district court may not be raised on appeal. *State v. Brown*, 300 Kan. 565, 590, 331 P.3d 797 (2014). Also, a litigant may not invite error

and then complain of the error on appeal. See *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011). The Kansas Supreme Court held, however, stipulating or failing to object to a criminal history score "[does] not bar a defendant from appealing the legal effect of prior convictions upon the calculation of his or her criminal history score." *Keel*, 302 Kan. at 571. Thus, Morris can challenge his sentence as illegal for the first time on appeal.

Morris also failed to appeal his sentencing within the 14 days required by statute. K.S.A. 2014 Supp. 22-3608(c). Instead, Morris raises this sentencing issue for the first time after his probation has been revoked and underlying sentence imposed. Generally, this also would prevent Morris from appealing his sentence because if an appeal is not filed within the time period prescribed by statute, this court lacks jurisdiction and must dismiss the case. See *State v. Hemphill*, 286 Kan. 583, 588, 186 P.3d 777 (2008). However, K.S.A. 22-3504(1) provides that a court may correct an illegal sentence at *any time*. A defendant may challenge his or her sentence as being illegal even after failing to challenge the sentence on direct appeal. See *State v. Williams*, 298 Kan. 1075, 1077, 319 P.3d 528 (2014). Appellate courts may even correct illegal sentences *sua sponte*. *State v. Kelly*, 298 Kan. 965, 975-76, 318 P.3d 987 (2014). This court is duty bound to follow Kansas Supreme Court precedent. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). In conformity with *Keel* and *Williams*, we find Morris' challenge to the classification of his pre-KSGA convictions under K.S.A. 22-3504(1) is properly before this court.

On the merits, the issue presented is whether Morris' pre-KSGA misdemeanor assault and battery convictions were properly scored as person offenses under the KSGA. Scoring under the KSGA is based on two factors: the severity level of the current crime of conviction and the defendant's criminal history score. K.S.A. 2014 Supp. 21-6804(c). In scoring criminal history under the KSGA, a distinction is made between person and nonperson crimes, with person crimes generally being weighted more heavily than

6

nonperson crimes. *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015). The presentence investigation report accepted by the court and agreed to by the parties indicates that Morris had in-state battery convictions in September 1987 and December 1992, both charged under K.S.A. 21-3412 (Ensley 1988), and one in-state assault conviction in December 1992 charged under K.S.A. 21-3408 (Ensley 1988). Both battery convictions and the assault conviction were classified as person misdemeanors for criminal history purposes in this case.

Morris argues that the pre-KSGA convictions for battery and assault were incorrectly classified as person misdemeanors because, at the time of these convictions, Kansas' assault and battery statutes did not differentiate between person and nonperson crimes. In *Murdock*, the Kansas Supreme Court found that when calculating a defendant's criminal history, all out-of-state crimes committed prior to the enactment of the KSGA in 1993 must be classified as nonperson offenses. 299 Kan. 312, Syl. ¶¶ 4-5. Here, Morris argues that the reasoning in *Murdock* applies to *all* pre-KSGA convictions and, therefore, his pre-KSGA in-state convictions must be classified as nonperson offenses. The court's holding in *Murdock*, however, was overruled in *Keel*, a decision issued by the Kansas Supreme Court on August 28, 2015, after Morris filed his brief in 2014. *Keel*, 302 Kan. at 589. Under *Keel*, a prior crime's classification as person or nonperson is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed. 302 Kan. at 589-90.

In determining what constitutes a comparable offense under the KSGA, the essential question is whether the offenses are similar in nature and cover similar conduct. *State v. Barajas*, 43 Kan. App. 2d 639, 643, 230 P.3d 784 (2010). The statutes need only to be comparable, not identical. *State v. Williams*, 299 Kan. 870, 875, 326 P.3d 1070 (2014). Also, when a statute governing a defendant's prior conviction contains a single set of elements, the prior crime may be used for sentencing purposes as long as the elements

of the prior crime are the same as or narrower than the later offense. *State v. Dickey*, 301 Kan. 1018, 1037, 350 P.3d 1054 (2015).

Morris' battery convictions occurred in 1987 and 1992. Morris was convicted under K.S.A. 21-3412 (Ensley 1988), which states: "Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."

The Kansas battery statute in force in July 2012 when Morris committed the current offense defines battery as "(1) [k]nowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2012 Supp. 21-5413(a). A violation of K.S.A. 2012 Supp. 21-5413(a) is a person misdemeanor. K.S.A. 2012 Supp. 21-5413(g)(1).

Here, admittedly, the statutes are not identical. The offenses, however, are clearly similar in nature and cover similar conduct. In fact, outside of the state-of-mind requirement in the 2012 version of the statute, the nature and conduct outlawed by the prior statute and K.S.A. 2012 Supp. 21-5413(a)(2) *are* identical. Because a showing of intentional conduct would satisfy an element of a crime requiring that an act be done knowingly, the prior statute is more narrow than the 2012 statute. For this reason, the court properly classified Morris' pre-KSGA battery convictions as person misdemeanors.

A similar analysis can be used for Morris' December 1992 assault conviction. Under K.S.A. 21-3408 (Ensley 1988), an assault is "an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm. No bodily contact is necessary." The Kansas statute in force in July 2012 when Morris committed the underlying crime at issue here, K.S.A. 2012 Supp. 21-5412, stated in part: "(a) Assault is knowingly placing another person in

8

reasonable apprehension of immediate bodily harm." A violation of K.S.A. 2012 Supp. 21-5412(a) is a person misdemeanor. K.S.A. 2012 Supp. 21-5412(e)(1). Again, the nature and conduct covered under the statutes is similar and the prior statute is narrower than the later statute, meaning these are comparable statutes.

Because the pre-KSGA battery and assault convictions were properly classified as person misdemeanors under the Kansas sentencing guidelines, we find the court did not err in classifying Morris' prior crimes for purposes of calculating his criminal history score.

Affirmed.