NOT DESIGNATED FOR PUBLICATION

No. 125,367

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTIAN DEMARCUS ROBBINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Submitted without oral argument. Opinion filed March 1, 2024. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Michael R. Serra*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Facing a charge for intentional first-degree felony murder, Christian Demarcus Robbins pleaded guilty to intentional second-degree murder, aggravated battery, and criminal possession of a firearm, arising from an incident in 2009 in which he fired several shots into a car and killed a passenger. Robbins later moved to withdraw his plea after sentencing, claiming he was misled by his attorneys about his right to pursue a self-defense claim. Following an evidentiary hearing, the district court denied Robbins' motion. After thorough review of the record, we find no error and affirm the district court's ruling.

1

There is a rather lengthy procedural history to Robbins' case, most of which is not at issue or relevant to the issues raised in the present appeal. We begin with an abbreviated review of the factual and procedural history of the case to place the present motion and appeal in context. A more comprehensive history may be obtained by reviewing the Kansas Supreme Court's denial of Robbins' direct appeal, *State v. Robbins*, No. 105,382, 2011 WL 6141438 (Kan. 2011) (unpublished opinion) (*Robbins I*), and this court's previous denial of Robbins' motion to withdraw his plea, *State v. Robbins*, No. 115,890, 2018 WL 2373283 (Kan. App. 2018) (unpublished opinion) (*Robbins II*).

On July 12, 2009, Robbins fired several shots into a vehicle driven by Bryce Martindale and occupied by Michael Lopez, killing Lopez. The State charged Robbins with intentional second-degree murder, attempted intentional second-degree murder, intentional aggravated battery, criminal discharge of a firearm at an occupied vehicle, and criminal possession of a firearm. After the charges were filed, the district court appointed Albert Bandy from the Public Defender's Office to represent Robbins. Reid Nelson, an attorney with the Capital Appeals and Conflicts Office, entered his appearance later as co-counsel. Robbins was bound over for trial on all charges.

*The State amends the complaint to add a felony-murder charge.*

At a pretrial hearing on April 28, 2010, Robbins pleaded guilty to the criminal possession of a firearm charge. The next day, the State moved to amend the complaint to add a charge of first-degree felony murder, an off-grid person felony, in violation of K.S.A. 21-3401(b), as an alternative to the intentional second-degree murder charge. Robbins' counsel argued that allowing the amendment would prejudice Robbins because it changed the theory of defense and would prevent him from claiming self-defense. The

2

district court allowed the amendment, finding that evidence presented at the previous preliminary hearing established probable cause for the felony-murder charge. After further consultation with the parties, the court agreed to reschedule the trial.

Further procedural events included Robbins seeking new counsel and his counsel moving to withdraw. A primary point of contention between Robbins and his counsel was whether Robbins could claim self-defense. Though Robbins and his counsel intended to claim self-defense to the second-degree murder charge, once the felony-murder amendment was allowed, Robbins' counsel advised him that the Kansas Supreme Court had ruled that a defendant could not claim self-defense to felony murder when the underlying felony was for discharging a weapon at an occupied vehicle. Robbins believed he should be able to claim self-defense because he was defending himself when he fired the shot that killed Lopez.

The district court appointed Jonathan Phelps as "independent counsel for the defendant for the limited purpose of giving the defendant a second opinion" regarding the availability of self-defense as his defense to the felony-murder charge. Thereafter, the district court held a pretrial hearing with Robbins, Bandy, Nelson, and Phelps all present. The court explained its decision to appoint Phelps, noting that Bandy and Nelson were still counsel of record for Robbins. Phelps told the court that he believed he had complied with the scope of the court's appointment by advising Robbins but otherwise had nothing else to report. The district court then cleared the courtroom—allowing only Phelps and Robbins to remain—to address the pro se motions by Robbins for a continuance and for replacement counsel.

During that discussion, Phelps explained he had advised Robbins that "the *Kirkpatrick* case would appear to eliminate self-defense under these circumstances," but he indicated that there "would probably be a good argument to reverse that rule of law on

3

that case under the facts of this case." Phelps denied that Bandy and Nelson had given Robbins any faulty, incorrect, or questionable advice.

The district court declined to allow Bandy and Nelson to withdraw, noting the unexpected changes in defense strategy were "not [their] fault" and recommending Robbins continue to work with his attorneys. The court added that there was no conflict of interest and that "counsel has worked very hard and very diligently on this case in attempting to professionally represent Mr. Robbins."

*Robbins pleads guilty to intentional second-degree murder.*

Later that day, the district court held a hearing at which the parties announced Robbins' decision to enter a plea agreement. In particular, the State explained Robbins agreed to plead guilty to intentional second-degree murder under K.S.A. 21-3402(a) in Count 1 and to a reduced charge in Count 3 of intentional aggravated battery with a deadly weapon, a severity level 7 person felony, in violation of K.S.A. 21-3414(a)(1)(B). The State agreed to dismiss all other remaining charges. The plea agreement also encompassed Robbins' previous guilty plea to the criminal possession of a firearm charge. As for sentencing, the parties agreed to recommend the court run each of the three counts internally concurrent, but the parties were otherwise free to argue their positions.

Before accepting Robbins' pleas, the district court engaged in a long colloquy with Robbins to ensure he was fully advised of the rights he was giving up; that he was competent to enter the pleas; the possible consequences and range of penalties; and that the pleas were fairly, voluntarily, and intelligently made. The district court next questioned Robbins about the facts relating to the crimes to which he was pleading guilty. Robbins stated he intentionally shot a firearm into a car occupied by Lopez and

4

Martindale, which resulted in the death of Lopez and bodily harm to Martindale. Robbins also agreed that he did so in a manner that could have killed Martindale. Robbins did not object to the district court taking judicial notice of the evidence presented at the preliminary hearing to support the factual basis for his guilty pleas.

Lastly, Robbins agreed that he had conferred with his three attorneys about his case and defenses he may have had to the charges and that he was satisfied with their advice. Robbins denied having any mental conditions or defects or that he had taken any alcohol or mind-altering drugs that would affect his ability to make a voluntary plea. Robbins confirmed that he was not being threatened or coerced into entering the pleas. Robbins then entered a guilty plea to each crime, and the district court formally accepted his pleas.

Robbins sought a durational departure, at least in part based on his inability to raise his self-defense argument to the felony-murder charge. He explained that he fired at the vehicle in which Lopez was riding because Martindale, the driver, was threatening him with a gun. He did not know Lopez, did not know he was in the car, and he had no reason to hurt him. Ultimately, the district court denied Robbins' motion for departure and imposed a controlling prison sentence of 272 months with a 36-month postrelease supervision period.

Robbins appealed his sentence, which was summarily affirmed by the Kansas Supreme Court. *Robbins I*, 2011 WL 6141438, at *1. The Supreme Court issued the mandate on January 5, 2012.

On August 23, 2012, Robbins filed a pro se motion to withdraw his pleas, asserting three reasons justifying the withdrawal: (1) ineffective assistance of counsel for failing to request a competency evaluation; (2) a conflict of interests with appointed

5

counsel that was not adequately addressed by the district court; and (3) judicial misconduct by the district court for accepting his guilty pleas and stating at sentencing it did not believe Robbins intended to kill Lopez. Robbins later added the allegation that "[h]e was misinformed and mislead [*sic*] into believing that there was no self-defense law in the State of Kansas," and that his trial attorneys "induced, persuaded, and fraudulently deceived and coerced" him into entering a guilty plea by failing to present evidence related to his theory of self-defense. Robbins' counsel requested an evidentiary hearing on the motion.

After the district court summarily denied Robbins motion he appealed, and this court upheld the district court ruling. See *Robbins II*, 2018 WL 2373283. Particularly relevant to this appeal, the panel concluded that self-defense was unavailable to Robbins based on the Kansas Supreme Court's decision in *State v. Kirkpatrick*, 286 Kan. 329, 184 P.3d 247 (2008), *abrogated by State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018). *Robbins II*, 2018 WL 2373283, at *4.

The Kansas Supreme Court granted, in part, Robbins petition for review of the panel's decision in *Robbins II*. The court's order stated it was "summarily vacat[ing] the portions of the Court of Appeals' opinion relying on [*Kirkpatrick* and] remand[ing] this matter to the Court of Appeals for consideration in light of *State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018)." *State v. Robbins*, 2019 WL 4187482, at *1 (Kan. 2019) (*Robbins III*).

On remand to this court, the panel reviewed its prior decision and the supplemental briefing provided by the parties, concluding:

"Based on our further de novo review, we conclude that Robbins' description of the events on the night of the shooting and the advice he claims he received from his

6

counsel create triable issues of fact and substantial questions of law, including whether Robbins was entitled to assert self-defense under the new standard in *Barlett*.

"Accordingly, we reverse the district court's summary denial of relief on Robbins' motion and remand for an evidentiary hearing." *State v. Robbins*, No. 115,890, 2019 WL 6795543, at *2 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1049 (2020) (*Robbins IV*).

The district court conducted the evidentiary hearing on remand on July 1, 2021, at which Robbins, Bandy, Nelson, and Phelps all testified. Robbins, through appointed counsel, submitted a written memorandum of law in support of his motion to withdraw plea. In the pleading, Robbins argued that his attorneys misled him "into believing that taking the plea was the only way to proceed because he had no self-defense defense." Robbins also asserted that "[a]ccording to [his] account of what took place on July 12, 2009 he would be entitled to assert self-defense and would not have been precluded from doing so if *Barlett* was the law of self-defense in this State."

Based on Robbins' uncontroverted testimony from the evidentiary hearing describing the events leading to the shooting, the district court concluded that "[u]nder *Barlett*, a claim of self-defense would have been factually and legally appropriate. There is contradictory evidence regarding whether Robbins acted in self-defense, however that would be something determined by the factfinder. Solely based on his own testimony, a self-defense instruction would have been factually and legally appropriate."

Yet the district court determined that Robbins *could not* rely on the new rule in *Barlett* because *Kirkpatrick* was the controlling law at the time he entered his plea:

"However, at the time Robbins entered his plea the rule in *Barlett* had not been decided and *Kirkpatrick* was still the guiding decision on whether Robbins was entitled to assert self-defense. Pursuant to the *Kirkpatrick* decision, Robbins would not have been legally entitled to an affirmative defense instruction on self-defense. Robbins' direct

7

appeal was over before the decision in *Barlett* was rendered. Robbins is not entitled to rely on a retroactive application of the *Barlett* decision as grounds for withdrawal of his plea. *State v. Singleton*, 33 Kan. App. 2d 478, 482, 104 P.3d 424 (2005)."

The district court found that Robbins was neither misled nor coerced by his attorneys into entering a guilty plea because they gave "experienced legal advice that self-defense was not available to him once he was charged with felony murder." Thus, the court concluded based on their testimony that Robbins received accurate information about the various options available to him, which were either (1) proceed to a jury trial on the felony-murder charge and risk being convicted if the court declined to give a self-defense instruction, but allow Robbins to challenge the issue on appeal to overturn *Kirkpatrick*; or (2) accept a guilty plea to the second-degree murder charge and receive a grid sentence with a known release date.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING ROBBINS' POSTSENTENCING MOTION TO WITHDRAW HIS PLEA

*Standard of Review*

Appellate courts review a district court's decision on a motion to withdraw plea for an abuse of discretion. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). "A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *State v. Moore*, 302 Kan. 685, 692, 357 P.3d 275 (2015).

Additionally, Robbins acknowledges that he must show "manifest injustice" to withdraw his plea after being sentenced. See K.S.A. 2022 Supp. 22-3210(d)(2) ("To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."). Manifest injustice exists when an outcome is "obviously unfair or shocking to the conscience." *State v. Hutto*, 313

Kan. 741, 745, 490 P.3d 43 (2021). In determining whether there is manifest injustice, Kansas courts generally assess whether manifest injustice has been shown by considering three nonexclusive factors gleaned from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

Robbins argues manifest injustice is present because (1) his trial attorneys misled him about the availability of self-defense for the felony-murder charge by incorrectly interpreting existing law. Although he concedes he was represented by competent counsel, Robbins alleges the lawyers were ineffective for leading him to believe that self-defense was not available as a defense to felony murder and none of his lawyers informed him that he could request a self-defense instruction at trial and then raise the self-defense issue on appeal if his request was denied; and (2) the prosecution mistreated and unfairly took advantage of him by denying his constitutional rights to due process and self-defense. Robbins contends that the prosecution coerced and mistreated him through manipulation of the charging process by amending the complaint shortly before trial in order to deprive him of his defense.

To the extent Robbins' claim of manifest injustice is based on ineffective assistance of counsel, his claim must meet the constitutional test for ineffective assistance from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). So, this court must consider: (1) whether his trial counsels' representation fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the alleged errors of trial counsel, the result of the proceeding would have been different. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022). In the context of a motion to withdraw plea based on ineffective assistance of counsel, that

9

means Robbins must show that but for the deficient performance of counsel, he would not have entered the plea and would have instead insisted on going to trial. *State v. Morris*, 298 Kan. 1091, 1103-04, 319 P.3d 539 (2014).

*The law of self-defense in cases in which a defendant is charged with felony murder*

Before we consider the specific claims advanced by Robbins, we first briefly summarize the Kansas Supreme Court decisions on the availability of self-defense in felony-murder cases that led us here.

Beginning with *State v. Bell*, 276 Kan. 785, 793, 80 P.3d 367 (2003), *disapproved on other grounds by State v. Anderson*, 287 Kan. 325, 197 P.3d 409 (2008), the Kansas Supreme Court held that a defendant charged with a "forcible felony" could not rely on a theory of self-defense. Like the facts here, *Bell* involved a defendant charged with first-degree felony murder and criminal discharge of a firearm at an occupied vehicle, which is a forcible felony, thus precluding a self-defense instruction. A majority of the Kansas Supreme Court later reaffirmed this holding in 2008 in *Kirkpatrick*, including criminal discharge of a firearm at an occupied building in the category of forcible felonies precluding a self-defense instruction. 286 Kan. at 337. The *Kirkpatrick* decision included a dissent which criticized the majority opinion for barring a defendant charged with any forcible felony from raising self-defense. The dissent argued that a defendant charged with felony murder should only be barred from claiming self-defense if the defendant is "*already* otherwise committing a forcible felony when he or she commits a separate act of violence." *Kirkpatrick*, 286 Kan. at 361-62 (Nuss, J., dissenting). In other words, when forcible felony and the act of self-defense are one and the same, the dissent argued a defendant should be able to assert self-defense. Robbins makes the same argument here—he contends that he fired his weapon only in self-defense—he was not already otherwise committing a forcible felony.

10

But notwithstanding the dissent in *Kirkpatrick*, four years later in *State v. Phillips*, 295 Kan. 929, 939, 287 P.3d 245 (2012), our Supreme Court reaffirmed the rule in *Bell* and *Kirkpatrick*, finding a self-defense instruction is not warranted in a case of felony murder when the defendant is charged with a forcible felony.

It was not until 2018, more than six years after Robbins' conviction became final, that the Kansas Supreme Court, in *Barlett*, for the first time rejected the "general rule" from *Bell* and *Kirkpatrick* that a defendant charged with committing any forcible felony could not raise a self-defense claim. *Barlett*, 308 Kan. at 84. Calling the rule "overly broad" and "inconsistent with both the intent of the Legislature and with other opinions of this court," the *Barlett* court adopted the view from the *Kirkpatrick* dissent by clarifying that "a defendant may not assert self-defense if that defendant *is already otherwise committing a forcible felony* when he or she commits a separate act of violence." (Emphasis added.) *Barlett*, 308 Kan. at 84. Thus, the Kansas Supreme Court held that a self-defense instruction may be appropriate when the defendant's actions constitute both the underlying forcible felony and the act of self-defense, such as criminal discharge of a firearm into an occupied vehicle or dwelling. 308 Kan. at 82-83 (describing facts of *Bell* and *Kirkpatrick*).

*Robbins was not misled by his trial attorneys about the availability of self-defense.*

Robbins asserts that his attorneys incorrectly advised him that *Kirkpatrick* would bar a self-defense instruction to the felony-murder charge given the facts of his case, and that "none of his attorneys had informed him that he could still request the self-defense instruction, preserving the argument for appeal if it were denied." We do not agree. Robbins' assertions ignore the testimony from his lawyers at the evidentiary hearing and disregard the factual findings by the district court based on that testimony.

11

All three of Robbins' lawyers testified that they viewed *Kirkpatrick* as likely prohibiting the trial court from giving a self-defense instruction and informed Robbins of this likelihood. Their testimony accurately characterizes the scope of *Kirkpatrick* as broadly prohibiting self-defense in a felony-murder case involving any forcible felony. The "overly broad" ruling in *Kirpatrick* was the basis of the dissent in *Kirkpatrick* and formed the foundation of the Supreme Court's ruling in *Barlett*. We agree with the district court's assessment that counsel gave Robbins adequate assistance and rendered reasonable professional judgment in advising him of the likely effect of the *Kirkpatrick* decision on his case.

Robbins makes a slightly different argument on appeal than he advanced to the trial court at the time of the evidentiary hearing. He suggests that even if *Kirkpatrick* might have prohibited a self-defense instruction on the felony-murder charge, "he *could* get a self-defense instruction to the criminal discharge count," and if he were consequently acquitted, the felony-murder charge would necessarily have failed. Robbins' argument is nearly identical to the hypothetical factual scenario raised in the dissent in *Kirkpatrick*, and it was raised because the dissent recognized the majority holding would prohibit a defendant, such as Robbins, from asserting self-defense to the underlying felony. See *Kirkpatrick*, 286 Kan. at 361 (Nuss, J., dissenting).

Robbins also claims that he was not advised that he could go to trial and thereafter challenge *Kirkpatrick.* All three of his lawyers testified that Robbins was informed of the possibility of challenging *Kirkpatrick* on appeal if he went to trial and did not receive the self-defense instruction. This course of action would subject Robbins to the possibility of receiving a life sentence without any guarantee that *Kirkpatrick* would be overturned. The district court findings reflect that it found the testimony of the lawyers to be credible:

"Their legal opinion to Robbins provided him with various options and worst-case scenarios that could occur. Robbins could proceed to jury trial and request an instruction on self-defense. If given, he could argue this defense to the jury, where it may or may not have been accepted by the jury. If the judge refused to provide the jury with a self-defense instruction, Robbins could preserve the refusal to instruct on self-defense as an appeal issue and argue for overturning the *Kirkpatrick* decision, if convicted. The final option was to pursue the plea offer by the State which would put the defendant on the sentencing grid, with the ability to argue for a departure sentence and good time credit. This latter option would give Robbins a known release date which would clearly be earlier than a conviction on the charge of felony murder.

"The facts as testified to by the witnesses indicate Robbins was represented by competent counsel whose assistance did not fall below an objective standard of reasonableness. Robbins was not misled, coerced, mistreated, or unfairly taken advantage of by his three counsels. Robbins' testimony also indicated the plea was fairly and understandingly made. . . . Robbins had to decide whether to proceed to jury trial or accepts a plea offer to a lesser offense. At the time and under the status of the law on self-defense, Robbins made a voluntarily and intelligent decision to enter a pleas that was most beneficial to him. The facts do not indicate that Robbins was misled by his counsel."

*Robbins was not legally entitled to rely on self-defense under* Barlett *because his conviction was final before* Barlett *was decided.*

Based on Robbins' uncontroverted testimony from the evidentiary hearing describing the events leading to the shooting, the district court concluded that "[u]nder *Barlett*, a claim of self-defense would have been factually and legally appropriate. There is contradictory evidence regarding whether Robbins acted in self-defense, however that would be something determined by the factfinder. Solely based on his own testimony, a self-defense instruction would have been factually and legally appropriate."

But the district court determined that Robbins *could not* rely on the new rule in *Barlett* because *Kirkpatrick* was the controlling law at the time he entered his plea:

13

"However, at the time Robbins entered his plea the rule in *Barlett* had not been decided and *Kirkpatrick* was still the guiding decision on whether Robbins was entitled to assert self-defense. Pursuant to the *Kirkpatrick* decision, Robbins would not have been legally entitled to an affirmative defense instruction on self-defense. Robbins' direct appeal was over before the decision in *Barlett* was rendered. Robbins is not entitled to rely on a retroactive application of the *Barlett* decision as grounds for withdrawal of his plea. *State v. Singleton*, 33 Kan. App. 2d 478, 482, 104 P.3d 424 (2005)."

As pointed out by the district court, generally "a change in the law acts prospectively," applying only to cases pending on direct review or not yet final. See *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013). Robbins' direct review became final in 2012, while *Barlett* was not decided until 2018. Stated more directly, *Bell* and *Kirkpatrick* would bind the district court on the self-defense issue since those decisions were the controlling caselaw at the time Robbins entered his plea.

Robbins presents no contrary authority challenging this determination by the district court. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). We find that Robbins was not entitled to the retroactive application of *Barlett* to his case.

*Robbins' remaining arguments are not preserved for appeal.*

Robbins next argues that the State mistreated and unfairly took advantage of him by waiting to amend the charges to add the felony-murder charge until the eve of trial. He claims that the State's conduct amounts to a manifest injustice because it was designed to deny his constitutional rights of due process and self-defense. Robbins fails to identify anything in the record from which we could conclude there was an unlawful, unethical, or

otherwise improper action on the part of the prosecution in amending the charges to include felony murder. As the district court found, the facts presented at the preliminary hearing established a factual basis for the amendment. We fail to see how amending the charges to include an offense for which evidence was already presented amounts to improper "coercion or mistreatment" by the prosecution.

And as the State points out, Robbins is making these arguments for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Likewise, constitutional grounds for reversal asserted for the first time on appeal are not properly before this court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). There are several exceptions to these general rules, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

But the decision to review an unpreserved claim is prudential. *State v. Jones*, 313 Kan. 917, 933, 492 P.3d 433 (2021); *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) ("Even if an exception would support a decision to review a new claim, we have no obligation to do so."). Robbins contends it would be imprudent to avoid reaching the merits of his constitutional arguments because his due process claim "deserve[s] scrutiny in order to protect the rights of Kansans and inform the State on proper charging conduct." He also asserts they are "not trivial matters, but go to the heart of whether the prosecution treated [him] fairly."

We decline to review Robbins' unpreserved claims. First, we do not view Robbins' due process claim as presenting only a question of law. The fundamental allegation is that

the State purposefully mistreated Robbins, which necessarily must be supported by facts. No attempt has been made to develop the record to support the factual allegation at any point, and most certainly not in conjunction with the remand of this case to the district court.

Furthermore, the Kansas Supreme court only granted a petition for review and vacated the portions of this court's prior decision relying on *Kirpatrick*. *Robbins III*, 2019 WL 4187482, at *1. See K.S.A. 60-2106(c) (stating that appellate court's "mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."); *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 15, 270 P.3d 1 (2011) ("When an appellate court has remanded a case for further proceedings, a trial court must comply with the appellate court's mandate and may consider only issues essential to implementing the mandate.").

The scope of our remand to the district court was as follows:

> "Based on our further de novo review, we conclude that Robbins' description of the events on the night of the shooting and the advice he claims he received from his counsel create triable issues of fact and substantial question of law, including whether Robbins was entitled to assert self-defense under the new standard in *Barlett*." *Robbins IV*, 2019 WL 6795543, at *2

Contrary to the statements made in Robbins' reply brief, his new constitutional claims were not within the scope of this court's mandate. His due process claims are not based on events on the night of the shooting or the advice Robbins claims he received from his counsel, and his due process argument does not impact our analysis of whether Robbins is entitled to assert self-defense under the new standard announced in *Barlett*. And reflective both that this is a new issue and not relevant to whether the Kansas

Supreme Court's 2018 ruling applies to Robbins' 2009 case, there was no factual development on the due process claim at the evidentiary hearing before the district court.

Robbins fails to point to any place in the record where the district court ruled on the due process claim and does not explain why his due process argument—which he says is "squarely . . . within the scope of the mandate to the district court"—was never raised during the evidentiary hearing or as part of his argument to the district court. Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised and ruled on below should be considered for the first time on appeal. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). We find no satisfactory explanation and thus decline to consider Robbins' new claim.

*Conclusion*

The record from the evidentiary hearing provides substantial, competent evidence supporting the factual findings by the district court that Robbins was properly informed of the law applicable to his case and that his lawyers did not mislead or coerce him into giving up his right to trial. Furthermore, the self-defense rule established in 2018 by our Supreme Court does not apply retroactively to Robbins as his case became final in 2012. Robbins fails to establish ineffective assistance of counsel or other manifest injustice warranting the withdrawal of his guilty plea. Thus, we affirm the district court's denial of Robbins' motion to withdraw his plea.

Affirmed.